539 So.2d 756 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
Arnoldo Vale MOYA, Defendant-Appellant.
No. CR 88-451.
Court of Appeal of Louisiana, Third Circuit.
February 8, 1989.
*757 Michael Small, Alexandria, for defendant-appellant.
Thomas Yeager, Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, STOKER and DOUCET, JJ.
DOUCET, Judge.
Arnoldo Moya, defendant herein, was charged by bill of information with the crime of knowingly and intentionally possessing marijuana with intent to distribute, a violation of La.R.S. 40:966(A)(1). Defendant, appearing without counsel, waived formal arraignment, pleaded not guilty, and requested a jury trial. On August 18, 1987, Moya appeared for trial with benefit of counsel. In open court, Moya waived his right to a jury and requested a bench trial. The court then proceeded to try Moya in a bench trial. Moya was thereafter found guilty of the charged offense. On August 28, the court denied defendant's motion for a post verdict judgment of acquittal. The court later held a sentencing hearing, in which imposition of the sentence was suspended. The court did, however, place the following special conditions on Moya: 1) that he refrain from any criminal activity during his probation period, said period to consist of active probation for three (3) years; 2) that defendant pay a fine of $2,000; 3) that Moya be placed in the Rapides Parish Jail for a period of one (1) year; and 4) that upon his release from the parish jail, defendant's probation be transferred to the State of Texas.
The facts show that Moya and a friend, Armando Villarreal, spent the weekend of October 10 and 11, 1986, in Alice, Texas. At approximately 2:00 a.m. on Sunday, October 12th, the two left their hotel in Alice and proceeded to El Campo, Texas in Villarreal's car. Defendant, who had been drinking heavily the whole weekend, slept while en route to El Campo, while Villarreal drove. The only time Moya had actually driven Villarreal's automobile was the previous Friday night, when he used the car to bring a girlfriend home. As defendant left to bring his female companion home, Villarreal apparently mentioned to Moya that the car was "loaded." Moya had originally rode into Alice with some other friends who apparently did not accompany the two to El Campo.
Upon arrival in El Campo, the two met up with Juan Perez and checked into a hotel. Sometime thereafter, Villarreal and Perez left Moya at the hotel. Upon their return, several phone conversations which Moya was apparently not privileged to, took place between either Villarreal or Perez and an unidentified third party. Moya did, however, state that on several occasions, he overheard Perez state that he was going to call "Benito." Although the testimony is unclear, it seems that sometime thereafter, while still in El Campo, defendant was informed that Villarreal and Perez were in possession of marijuana. The marijuana was then brought into the hotel room, where, according to Moya, the marijuana was broken down into small quantities and placed into zip-lock bags. Moya insists that he did not take part in the breaking down, but was in the room during the process. Moya later helped load the trunk of Villarreal's car with two plastic bags containing the smaller, zip-lock bags.
Although it is unclear, it appears that Moya was then informed that the three would be going to Louisiana to "drop off" the marijuana. At this point, Moya asked if he could take a bus home, but was told by Villarreal that he was needed for the trip to help pay expenses. Moya maintains that he was drinking heavily during this entire period. The three left El Campo on the Monday following their weekend in Alice.
Upon reaching Beaumont, the three met up with Benito Hernandez, who was apparently a friend of Perez. Perez completed the trip with Hernandez in Hernandez's van.
Testimony was heard at trial from Louisiana State Trooper Travis R. Wiley. Wiley, who had previously purchased marijuana from Hernandez as part of an ongoing criminal investigation, was contacted by Hernandez on Sunday, October 12th, and Monday, October 13th. Hernandez apparently *758 told Wiley that he had knowledge of two Mexicans in a motel room who had twenty-eight pounds of marijuana which they wished to sell. Wiley informed Hernandez that the marijuana was to be broken down into one-pound packages in zip-lock bags. The two then ultimately decided to complete the transaction on Tuesday, October 14th. Hernandez informed Wiley that he would be driving a van and stated that "they'll be following me in the car with the marijuana."
Wiley met the four on the 14th in an Alexandria parking lot at approximately 10:40 p.m. Wiley testified that the Hernandez van drove into the lot, followed by a 1979 Dodge four-door. Wiley walked over to the van, where Hernandez introduced Wiley to Perez, who was still a passenger in Hernandez's van. Wiley then informed Hernandez that he wished to see the marijuana before proceeding to a secluded area to finalize the transaction. At that point, Hernandez drove his van over to the Dodge, where he conversed in Spanish with Villarreal. Villarreal and Moya then exited the car and walked to the rear, where Villarreal opened the trunk, moved a blue jacket, ripped open one of the plastic bags, and displayed the marijuana to Wiley. At that point everyone returned to their respective vehicles. The van and Dodge then followed Wiley's car to Alexandria Lock and Storage. There, several State Police vehicles converged on the two vehicles. Moya, Villarreal, Hernandez, and Perez were then all placed under arrest. Thirty-one pounds of marijuana was thereafter seized and admitted into evidence at trial.
We first address appellant's argument that he was deprived of his constitutional right to trial by jury when the trial court accepted his purported waiver of that right without ascertaining that the waiver was knowingly and intelligently made.
Both La.Const. Art. 1, § 17 and La.C.Cr. P. art. 782, provide that cases in which punishment is necessarily confinement at hard labor, it shall be tried before a jury of twelve persons. The right to a jury trial, however, may be waived if the waiver is knowingly and intelligently made. La. Const. Art. 1, § 17, La.C.Cr.P. art. 780.
The Louisiana jurisprudence has consistently held that the record on appeal must, for a waiver to have been knowingly and intelligently made, show some manifestation of an effective waiver. State v. Muller, 351 So.2d 143, 146 (La.1977). The Louisiana Supreme Court has upheld cases in which such a waiver has been made by a defendant's attorney, rather than the defendant personally, when the defendant was considered to have understood his right to a jury trial and still consented to such a waiver. The court has also maintained that it refuses to adopt an absolute rule that no jury waiver can be effective unless the record reflects that a defendant was personally informed by the trial judge of his right to a jury trial. State v. Muller, supra; State v. Phillips, 365 So.2d 1304, 1308-1309 (La.1978). In addition, the court has stated that the preferred method of insuring that a waiver is knowingly and intelligently made is for the judge to advise the defendant to waive the right personally either in writing or by oral statement in open court on the record. State v. Wilson, 437 So.2d 272 (La.1983).
In the instant situation, defendant personally appeared at his arraignment, where he waived benefit of counsel for the arraignment. The minutes reflect that the "court explained to the accused his right to elect trial by jury or trial by judge alone. The accused stated he desires to elect trial by jury." (Emphasis added) At trial, after defendant obtained counsel, defendant waived his right to a trial by jury. The following exchange took place between defendant and his counsel:
"BY MR. CORTELLO:
Is it correct that you waive your right to a jury and want to be tried ...
BY MR. MOYA:
Yes, sir.
BY MR. CORTELLO:
... by the judge alone?
BY MR. MOYA:
Yes, sir."
As the minutes show, Moya was directly informed of his right to a trial by jury at a *759 time when he was representing himself. At that time, Moya, acting for himself, made the decision to invoke his right to such a trial. It, therefore, seems highly likely that Moya understood the nature of his decision at that time. Later, after obtaining the benefit of counsel, Moya, in open court, withdrew his previous request and waived his right to a jury trial. It seems unlikely that Moya was less informed after obtaining counsel than he was during his arraignment. In addition, the procedure used seems to be directly in line with that suggested in Wilson, supra. The case, therefore, is one where the court went beyond the prescribed steps for obtaining a knowing and intelligent waiver, as Moya was actually informed by the judge of his right and declared in open court with counsel his intention to waive said right. Therefore, we reject this contention.
We next address appellant's contentions that there was insufficient evidence to establish guilt beyond a reasonable doubt and that the trial court therefore erred in failing to grant his Motion for Post-Verdict Judgment of Acquittal.
In examining whether or not the evidence introduced at trial was sufficient to meet the reasonable doubt standard, the Louisiana jurisprudence has consistently followed the test set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt." In State v. Mussall, 523 So.2d 1305 (La.1988), the Louisiana Supreme Court further explained the steps involved in this standard. There, the court stated:
"First, a review of a criminal conviction record for sufficiency of evidence does not require a court to `ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' Jackson, supra, 443 U.S. at 337, 99 S.Ct. at 2798, 61 L.Ed.2d at 585. Second, a reviewing court must consider the record through the eyes of a hypothetical rational trier of fact who interprets all of the evidence as favorably to the prosecution as any rational fact finder can. Third, the inquiry requires the reviewing court to ask whether such a hypothetical rational trier of fact interpreting all of the evidence in this manner could have found the essential elements of the crime beyond a reasonable doubt."
The court in Mussall, supra, goes on to point out that the key to this standard of review is rationality.
The essential elements of the crime of possession with intent to distribute, under La.R.S. 40:966(A)(1), are that a person 1) knowingly or intentionally possess; 2) with intent to distribute; 3) a controlled dangerous substance classified in Schedule I.
There is no doubt that the third element of the crime is satisfied since marijuana is classified as a Schedule I controlled dangerous substance. Thus, the next inquiry is whether defendant "knowingly or intentionally possessed" the marijuana. It was established at trial that defendant knew of the presence of marijuana from, at the earliest, some time after he and Villarreal reached El Campo, Texas. With respect to the question of whether or not defendant possessed the drug, he admitted that he was present in the motel room when the marijuana was broken down into one-pound bags. Additionally, defendant admitted to helping load the bags of marijuana into the car in which he was riding to Louisiana. Possession of a controlled dangerous substance can either be actual or constructive and we find these facts to be sufficient to constitute constructive possession.
The final element of La.R.S. 40:966(A)(1) is the "intent to distribute." In State v. Frederick, 340 So.2d 1353 (La.1976), the court stated that, in proving an intent to distribute, only a general criminal intent is required. Proof of this element may be inferred from the circumstances surrounding the transaction, including the amount and form of the drug found. State v. Willis, 325 So.2d 227 (La.1975); State v. Stewart, 465 So.2d 206 (La.App. 3rd Cir. 1985). By defendant's own testimony, he *760 was aware that the trip to Louisiana was to "drop off" the drugs. Additionally, the marijuana was divided into small packages for distribution and was of the amount from which it can be inferred that it was carried for the purpose of distribution. Thus, considering these facts, it is evident that the final element is satisfied.
In appellant's final assignment of error, he contends that the trial court erred in imposing a constitutionally excessive sentence upon him. La. Const. Art. I, § 20. Imposition of sentence was suspended. However, as a special condition, the trial judge required Moya to serve one year in the parish jail and to pay a fine of $2,000. These two aspects form the basis of this assignment of error.
Under La.R.S. 40:966(C)(2), which stated the penalties for this offense at the time of defendant's arrest, the defendant could have been sentenced at hard labor for not more than ten years without benefit of probation or suspension of sentence and be required to pay a fine of not more than $5,000.
Under La. Const. Art. I § 20, and State v. Sepulvado, 367 So.2d 762 (La.1979), a sentence may be excessive and in violation of the Louisiana Constitution even though it is within the statutory limits for such an offense. The guidelines for determining whether or not such an offense is excessive is found in La.C.Cr.P. art. 894.1. Sepulvado, supra; State v. Cox, 369 So.2d 118 (La.1979). Accordingly, a sentence must be so grossly disproportionate to the crime committed that, in light of the harm caused to society, its imposition would shock one's sense of justice. State v. Cann, 471 So.2d 701 (La.1985); State v. Bonanno, 384 So.2d 355 (La.1980).
The pre-sentence report and sentencing hearing show that, other than one arrest for a D.W.I., Moya has no previous criminal record. He has a wife and six minor children, all of whom are dependent upon his support and income. His family also receives food stamps.
At the sentencing hearing, the only witness called was Moya's brother. Moya's brother maintained, basically, that his brother was a family man and a hard worker. The pre-sentence report listed a fine as a possible special condition of the sentence, but did not state further confinement as such.
Although defendant is a first time offender, the nature and seriousness of the crime involved must be considered. In his articulation of the basis for this sentence, the trial judge pointed out the significance of this aspect:
"This was not a casual activity. This was not just coming into the parish with a few ounces of marijuana. This was a big time deal that you were involved in. There's got to be some control over the distribution of drugs in this parish and in this country."
The sentence is well within the statutory limits. Although the pre-sentence investigation did not recommend further incarceration, it seems, as the trial judge stated, that defendant was fully aware of the activity which he and his co-defendants were engaged in, at least from the time the car was loaded in El Campo. The sentence therefore, was not so grossly disproportionate to the crime committed as to shock one's sense of justice. Thus, this assignment lacks merit.
Accordingly, for the reasons assigned, the conviction and sentence of the lower court is affirmed.
AFFIRMED.