796 So.2d 779 (2001)
STATE of Louisiana
v.
Andrew Keith ROBERTS.
No. 01 00154-KA.
Court of Appeal of Louisiana, Third Circuit.
October 3, 2001.
*781 J. Wilson Rambo, Monroe, LA, Counsel for Defendant/Appellant Andrew Keith Roberts.
Michael Harson, District Attorney, Lafayette, LA, Counsel for Appellee State of Louisiana.
Court composed of JIMMIE C. PETERS, GLENN B. GREMILLION, and ELIZABETH A. PICKETT, Judges.
PETERS, J.
The defendant, Andrew Keith Roberts, was charged by bill of information with pornography involving juveniles, a violation of La.R.S. 14:81.1. The trial judge convicted him of the charge after a bench trial and sentenced him to serve four years at hard labor without the benefit of parole, probation, or suspension of sentence. He appeals his conviction and sentence, asserting seven assignments of error.

*782 DISCUSSION OF THE RECORD
There is little dispute concerning the facts giving rise to the criminal charge. On the morning of June 10, 1999, the defendant appeared at the Lafayette Public Library on West Congress Street in Lafayette, Louisiana, and obtained permission to use one of the computer terminals available for public use. As the defendant used the terminal, Jerome Marcantel, a library employee, passed the location and observed an image of what appeared to be a young nude female on the monitor screen of the computer being used by the defendant. Another library employee telephoned the Lafayette City Police to report Mr. Marcantel's observation, and Officer Eunice Defro responded to that call.
As Officer Defro identified himself to the defendant, who was still at the computer terminal, the defendant immediately reached for the computer mouse in an apparent effort to delete the remaining images on the monitor screen. However, Officer Defro instructed him not to touch the mouse, and the defendant complied with that instruction. Officer Defro observed nude "young females on the screen," and, before escorting the defendant from the computer location, the officer asked Larry H. Gass, the library administrative assistant, to secure the computer terminal until it could be further evaluated. Officer Defro then escorted the defendant to a private office in the library.
Michael C. Savoy, the library computer specialist, downloaded the images visible on the monitor onto two disks. Sometime later, Lafayette City Detective Charles Brenke copied the twenty images downloaded by Mr. Savoy. These copies, together with the two disks, were introduced into evidence by the state. All twenty images are of young females, some fully clothed, some partially clothed, and some completely nude.
While in the library's private office, the defendant dictated a statement to Officer Defro wherein he acknowledged that he had been observing "Japanese sites called Lolita and are usually Juvenile nudism." Later that afternoon, the defendant gave a recorded statement to Detective Brenke wherein he acknowledged pulling up at least thirty separate web sites while in the library. However, the defendant asserted that only one of the thirty sites contained "sexually explicit material." The defendant informed Detective Brenke that he simply pulled up the web sites using the keywords of "Lolita" and "Japanese Excite" to "see what's there," acknowledged that he fully expected to see nude children on these web sites, and further acknowledged that he knew some of the web sites might contain "sexually explicit pictures." However, he denied that he was looking for such explicit pictures. In fact, he informed Detective Brenke that when he encountered the one web site containing the sexually explicit material, he immediately closed the site because such web sites "tends [sic] to sicken [him]." As to the other images of young nude children, he compared viewing them to that of "look[ing] at a sunset."
Despite the defendant's stated disdain for sexually explicit pictures, the evidence suggests otherwise. The state established that the June 10, 1999 incident was not the first time the defendant had faced charges for pornography involving juveniles. In early 1999, a police search of the defendant's residence resulted in the recovery of computer disks containing images of nude children involved in graphic sexual acts. The state introduced the computer disks as well as printed copies of the images found on the disks as evidence in this matter. The more than forty reproduced *783 images depict both male and female children obviously under the age of seventeen involved in graphically explicit sexual activity.
As a result of the 1999 investigation, the defendant ultimately entered guilty pleas to six counts of unauthorized entry of a place of business, violations of La.R.S. 14:62.4; one count of illegal possession of stolen things, a violation of La.R.S. 14:69; and one count of obscenity, a violation of La.R.S. 14:106. The defendant had originally been charged with pornography involving juveniles and pled to the lesser charge of obscenity. The defendant entered his guilty pleas on June 3, 1999, seven days before committing the offense currently before this court. On June 3, 1999, the trial judge sentenced the defendant to serve a combined sentence of five years at hard labor for all the counts, suspended the sentence, and placed the defendant on three years supervised probation.
In the matter now before us, the trial judge, after hearing all the evidence presented, returned a guilty verdict. On September 20, 2000, the trial judge sentenced the defendant to serve four years at hard labor without benefit of probation, parole, or suspension of sentence. The probation sentence imposed on June 3, 1999, had already been revoked, and the defendant was then serving the original five-year hard labor sentence. The trial judge in this matter ordered that two years of the four-year sentence run concurrently with the five-year sentence and recommended that the defendant be placed in a sexual offender facility for treatment. Thereafter, the trial judge denied the defendant's motion to reconsider his sentence, and he perfected this appeal.

ASSIGNMENTS OF ERROR NOS. 1, 2, & 3.
In his first three assignments of error, the defendant asserts that (1) the evidence presented is legally insufficient to sustain his conviction, (2) the trial judge erred in denying his motion for acquittal, and (3) the trial judge erred in denying his motion for new trial. All three of these assignments address the sufficiency of evidence and will be considered together.
It is well settled that when the issue of sufficiency of evidence is raised on appeal, we must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
The offense of pornography involving juveniles may be committed in a number of different ways. In this case, the state charged the defendant with a violation of La.R.S. 14:81.1(A)(1), which prohibits "[t]he photographing, videotaping, filming, or otherwise reproducing visually of any sexual performance involving a child under the age of seventeen." The term "sexual performance" is defined by the statute as "any performance or part thereof that includes sexual conduct involving a child under the age of seventeen." La. R.S. 14:81.1(B)(1). The statute defines a "performance" as "any play, motion picture, photograph, dance, or other visual presentation." La.R.S. 14:81.1(B)(2). The statute further defines "sexual conduct" as "actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sadomasochistic abuse, or lewd exhibition of the genitals." La. R.S. 14:81.1(B)(3). The trial judge concluded that three of the twenty images recovered from the library computer and printed by Detective Brenke constituted visual reproductions of sexual performances *784 of children under the age of seventeen and that the defendant did not "accidentally" pull these images onto the computer screen, but actively sought out the images. Thus, the trial judge concluded that the state established beyond a reasonable doubt that the defendant visually reproduced sexual performances involving children under the age of seventeen by reproducing these three images. The defendant questions proof of all of the elements of the offense.

Visual Reproduction Element.
Mr. Marcantel, Mr. Gass, Mr. Savoy, and Officer Defro all testified that they observed images of unclothed young girls on the monitor screen of the computer being used by the defendant. Mr. Marcantel described the image he observed as follows:
Okay. What I sawobserved to be a girl, prepubescent, not yet developed in the breasts. HerShe was wearing what appeared to be a Catholic school uniform, a red tartan skirt. Her skirt was pulled up. Her vagina was showing. Her vagina had no hair growing on it. She appeared to be a young girl, probably between 12 and 14.
In his statement to Detective Brenke, the defendant described the image containing "sexually explicit material" that he had encountered as follows:
The actual picture that I encountered was of it looked as if a fourteen to sixteen year old female in the front of the picture and the back of the picture was possibly anywhere from a thirty to forty year old male that his geni ... the genitalia was censored, but the, the obviousness of it was that they were actually having copulation.
The trial judge specifically found that the defendant intentionally reproduced the images on the computer monitor screen.
Although the defendant did not copy any of the images described in the evidence presented, we do not find that he had to make copies to satisfy the "visual reproduction" requirement of La.R.S. 14:81.1(A)(1). When interpreting a statute defining criminal activity, we must bear in mind that the purpose is "to promote justice and to effect the objects of the law." La.R.S. 14:3. In order to do so, "all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." Id. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1927 (1986) defines "reproduction" as "the act or process of reproducing" and defines "reproduce" to include "to make an image, copy, or other representation of" the original. Applying the statutory interpretative concepts to La.R.S. 14:81.1 and the definition of "reproduction" as found in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, we conclude that the intentional searching for nude images of juveniles by using certain key words to access web pages which contain such images and the pulling up and viewing of these offensive images on the computer screen satisfies the "visual reproduction" requirement of the statute. Thus, we find no error in the trial judge's determination that the state established this element of the offense beyond a reasonable doubt.

Age of the Females Exhibited Element.
The defendant also asserts that the evidence is not sufficient to establish that the offensive images reproduced are of children under the age of seventeen. In support of this assertion, the defendant relies primarily on the trial testimony of Charles Ogwyn, a web page designer, who testified concerning the ease with which images may be manipulated on the Internet. Called to testify by the defendant, Mr. Ogwyn explained how a body image *785 might be superimposed on another, how clothes might be removed from a photograph, and how even pubic hair could be removed. However, Mr. Ogwyn could not testify that the images recovered from the library computer used by the defendant had been manipulated or changed in any manner.
To assist the trier of fact in evaluating the age of an individual displayed or depicted in an offensive image, La.R.S. 14:81.1(G) provides specific guidelines which may be considered:
In prosecutions for violations of this Section, the trier of fact may determine, utilizing the following factors, whether or not the person displayed or depicted in any photograph, videotape, film, or other video reproduction introduced in evidence was under the age of seventeen years at the time of filming or recording:
(1) The general body growth, bone structure, and bone development of the person.
(2) The development of pubic or body hair on the person.
(3) The development of the person's sexual organs.
(4) The context in which the person is placed or the age attributed to the person in any accompanying video, printed, or text material.
(5) Available expert testimony and opinion as to the chronological age or degree of physical or mental maturity or development of the person.
(6) Such other information, factors, and evidence available to the trier of fact which the court determines is probative and reasonably reliable.
Any trier of fact evaluating the three reproduced images at issue herein, or for that matter, the remaining seventeen reproduced images, would have little difficulty in concluding the images are those of females under the age of seventeen. Applying the factors found in La.R.S. 14:81.1(G), we find no error in the trial judge's determination that the state established beyond a reasonable doubt that the subjects in the images reproduced by the defendant were under the age of seventeen at the time the images were originally produced as contemplated by the statute.

Sexual Performance Element.
The defendant further asserts that the evidence does not establish that the offensive images constitute "sexual performance" as required by La.R.S. 14:81.1(A)(1). The defendant does not dispute that the reproduced images depict a form of "performance" by those posing in the images, but disputes whether these performances include "sexual conduct" as defined in La.R.S. 14:81.1(B)(3).
We must agree that the three reproduced images found by the trial judge to violate La.R.S. 14:81.1(A)(1) do not depict actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, or sadomasochistic abuse. Therefore, to constitute sexual conduct in violation of the statute, the images must depict "lewd exhibition of the genitals." La.R.S. 14:81.1(B)(3). In each of the three reproduced images, at least one female subject's genitalia are visible. Additionally, the scene described by the defendant in his statement to Detective Brenke did depict at least simulated sexual intercourse.
The supreme court in State v. Prejean, 216 La. 1072, 1078, 45 So.2d 627, 629 (La. 1950), addressed the type of activity necessary to constitute lewd and lascivious activity:
The word `lewd' means lustful, indecent, lascivious, and signifies that form of immorality which has relation to sexual impurity or incontinence carried on in a wanton manner. The word `lascivious' *786 means tending to excite lust, lewd, indecent, obscene, relating to sexual impurity, tending to deprave the morals in respect to sexual relations.
See also, State v. Holstead, 354 So.2d 493 (La.1977). Additionally, some Federal jurisprudence is helpful to our analysis. In United States v. Dost, 636 F.Supp. 828 (S.D.Cal.1986), aff'd, 813 F.2d 1231 (9th Cir.1987), the trial court was called upon to determine whether certain images constituted "lascivious exhibition of the genitals or pubic area" as prohibited "sexually explicit conduct" under 18 U.S.C. § 2255(2)(E) of the Child Protection Act of 1984, as amended. In formulating factors to be considered, the trial court stated the following:
Because of the sexual innocence of children, that which constitutes a "lascivious exhibition" of a child's genitals will be different from that of a "lascivious or lewd exhibition" of an adult's genitals. For example, Judge Miller in [United States v. Nemuras, 567 F.Supp. 87 (D.Md.1983), aff'd, 740 F.2d 286 (4th Cir.1984) ] referred to the sexual coyness of the visual depiction. A child of very tender years, because of his innocence in matters sexual, would presumably be incapable of exuding sexual coyness. Sexual coyness is an expression outside the young child's range of experience.
Instead this Court feels that, in determining whether a visual depiction of a minor constitutes a "lascivious exhibition of the genitals or pubic area" under § 2255(2)(E), the trier of fact should look to the following factors, among any others that may be relevant in the particular case:
1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
4) whether the child is fully or partially clothed, or nude;
5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.
Of course, a visual depiction need not involve all of these factors to be a "lascivious exhibition of the genitals or pubic area." The determination will have to be made based on the overall content of the visual depiction, taking into account the age of the minor.
Id. at 832.
These factors have been applied in other Federal cases. See United States v. Wiegand, 812 F.2d 1239 (9th Cir.1987); United States v. Amirault, 173 F.3d 28 (1st Cir.1999). In Amirault, the court stated:
We believe that the Dost factors are generally relevant and provide some guidance in evaluating whether the display in question is lascivious. We emphasize, however, that these factors are neither comprehensive nor necessarily applicable in every situation. Although Dost provides some specific, workable criteria, there may be other factors that are equally if not more important in determining whether a photograph contains a lascivious exhibition. The inquiry will always be case-specific.
Amirault, 173 F.3d at 32.
We agree with the Amirault rationale in that we find the Dost factors helpful in our analysis herein but do not find them all *787 inclusive or necessarily applicable to every situation. However, because the factors do provide some specific, workable criteria to use in our analysis, we consider them together with all the evidence before us.
State's Exhibit 9K constituted the first of the three images the trial judge found to violate La.R.S. 14:81.1(A)(1). In that exhibit, the completely nude female appears to be in her early teens. She is lying on her back on what appears to be a lace sheet or cover. Her pose reveals her nudity from her head to slightly above her knees. Her legs are closed, but her underdeveloped breasts are completely exposed, and her genitalia are partially exposed. The pose is one generally associated with sexual activity and, therefore, is sexually suggestive. Such a pose is totally inappropriate for an early-teenage girl. The child's facial expression suggests sexual coyness and a willingness to engage in sexual activity. While the focal point of the visual depiction is not completely on the female's genitalia, they are clearly displayed. A rational trier of fact could conclude that the overall visual depiction is intended or designed to elicit a sexual response in the viewer. Therefore, we find no error in the trial judge's determination that this visual depiction constituted a "lewd exhibition of the genitals."
Exhibits 9Q and 9R, the other two exhibits found by the trial judge to constitute "lewd exhibition of the genitals," are not nearly as explicit as Exhibit 9K. Both exhibits are of twin girls in their early teens, completely nude. In Exhibit 9Q, the twins are standing side-by-side on what appears to be the same lace sheet or cover on which the child in Exhibit 9K was lying. The two girls are facing forward, and their breasts are partially covered by their long hair. The visual depiction reveals the children's nudity from head to toe. The right leg of the child on the left obscures her genitalia, but the child on the right is standing with her legs slightly spread, revealing her genitalia. In Exhibit 9R, the same girls as depicted in Exhibit 9Q are kneeling on the lace sheet or cover and facing forward. Their breasts are partially covered by their hair, but the genitalia of both girls are visible. The setting is somewhat sexually suggestive, although the manner in which the girls are posed (standing and kneeling) would not generally be associated with sexual activity. Still, the pose is inappropriate for the young children depicted. The children's facial expressions suggests sexual coyness and a willingness to engage in sexual activity. While the focal point of the visual depiction is not completely on the females' genitalia or pubic areas, they are clearly displayed. The trial judge concluded that the overall visual depiction is intended or designed to elicit a sexual response in the viewer.
We choose not to address whether Exhibits 9Q and 9R meet the Dost criteria for "lewd exhibition of the genitals" because Exhibit 9K clearly does. Thus, we find no error in the trial judge's determination that the state established beyond a reasonable doubt the "lewd exhibition of the genitals" element.
Reviewing all of the evidence presented, particularly the testimony of Mr. Marcantel, the statement of the defendant to Detective Brenke, and Exhibit 9K, we conclude that a rational trier of fact could have found all of the elements of the offense of pornography involving juveniles proven beyond a reasonable doubt. Because we conclude that a rational trier of fact could have found all of the elements of the offense of pornography involving juveniles proven beyond a reasonable doubt, we reject the defendant's assertion that the evidence presented was legally insufficient to sustain his conviction. Having *788 reached that conclusion, it follows that we reject the defendant's assertion that the trial judge erred in denying his motion for acquittal and motion for new trial. Therefore, we find no merit in the defendant's first three assignments of error.

ASSIGNMENT OF ERROR NO. 4.
In this matter, the defendant waived his right to a jury trial and elected to be tried by the trial judge alone. In this assignment of error, he asserts that he did not knowingly and intelligently waive his jury trial right. However, in raising this assignment of error, the defendant points to no evidence that his waiver was not knowingly and intelligently made. Instead, he asserts that, because the trial judge failed to inquire into his educational background, literacy, understanding of the law, and understanding of the consequences of a bench trial before accepting his request to waive the jury, the trial judge was unable to affirmatively determine that he made a knowing and intelligent choice.
Immediately before trial began, the trial judge stated that she needed "to inform [the defendant] of his right to trial by jury and make sure that he understands what he's doing." The trial judge then explained to the defendant that a conviction for a violation of La.R.S. 14:81.1 "requires a hard labor sentence" and because of that fact, the defendant "would be entitled to have [his] case tried by a jury of 12 people, 10 of whom would have to agree in order to convict [him] of the crime." The trial judge further stated to the defendant that "[defendant's counsel] has indicated that he has spoken to you about this right and that you have voluntarily waived [your jury trial right] in favor of allowing the Court to try this case as the finder of fact." When questioned whether this statement was correct and whether he understood the trial judge's comments, the defendant answered in the affirmative.
Louisiana Code of Criminal Procedure article 780(A) provides in pertinent part that "[a] defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge." Additionally, the defendant, with the permission of the trial judge, "may exercise his right to waive trial by jury at any time prior to the commencement of trial." La.Code Crim.P. art. 780(B). While the trial judge must determine if the defendant's jury trial waiver is knowing and intelligent, that determination does not require a Boykin-like colloquy. See State v. Frank, 549 So.2d 401 (La.App. 3 Cir.1989).
As in the case of other significant rights, waiver of trial by jury is valid only if the defendant acted voluntarily and knowingly. State v. Kahey, 436 So.2d 475, 486 (La.1983); State v. Wilson, 437 So.2d 272, 275 (La.1983). While the Louisiana Supreme Court has rejected an absolute rule which would require the trial judge to personally inform the defendant of his right to a jury trial, Kahey, supra; State v. Moya, 539 So.2d 756, 758 (La.App. 3d Cir.1989), the preferred method of ensuring the right is for the trial judge to advise the defendant personally on the record of his right to a jury trial and to require the defendant to waive the right personally either in writing or by oral statement in open court on the record. State v. Wilson, 437 So.2d at 275; State v. Jones, 537 So.2d 1244, 1247 (La.App. 4th Cir. 1989); State v. Moya, 539 So.2d at 758.
State v. Abbott, 92-731, pp. 3-4 (La.App. 4 Cir. 2/25/94), 634 So.2d 911, 913-914.
The trial judge in the matter before us specifically advised the defendant of his right to trial by jury and recorded the *789 defendant's decision in the record. We find no merit in this assignment of error.

ASSIGNMENTS OF ERROR NOS. 5, 6, & 7.
The defendant's final three assignments of error all address the validity of the sentence imposed. In these assignments of error, the defendant asserts that the trial judge (1) imposed an unduly harsh and excessive sentence, (2) failed to articulate for the record the factual basis and considerations taken into account in imposing sentence, and (3) erred in denying the defendant's motion for reconsideration of sentence.
An individual convicted of the offense of pornography involving juveniles "shall be fined not more than ten thousand dollars and be imprisoned at hard labor for not less than two years or more than ten years, without benefit of parole, probation, or suspension of sentence." La.R.S. 14:81.1(E). Thus, the trial judge sentenced the defendant within the statutory range. However, a sentence may be reviewed for excessiveness despite falling within the statutory range. See State v. Sepulvado, 367 So.2d 762 (La.1979).
"[C]ruel, excessive, or unusual punishment" is prohibited by La. Const. art. I, § 20. Additionally,
A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentencing is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits.
State v. Bradham, 94-71, p. 3 (La.App. 5 Cir. 5/31/94), 638 So.2d 428, 430.
In sentencing a defendant, the trial judge must "state for the record the considerations taken into account and the factual basis therefor in imposing sentence." La.Code Crim.P. art. 894.1(C). While La.Code Crim.P. art. 894.1 provides the general sentencing guidelines to the trial judge, those guidelines are of little value when the penalty to be imposed is without the benefit of parole, probation, or suspension of sentence. Louisiana Code of Criminal Procedure article 894.1(A) identifies three factors which, if any one is found to be present by the trial judge, an imprisonment sentence "should" be imposed. Additionally, La.Code Crim.P. art. 894.1(B) provides thirty-three factors or "grounds" which, "while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation." Thus, we need not consider whether the trial judge considered La. Code Crim.P. art. 894.1(A) or (B) because the trial judge had no choice but to sentence the defendant to a hard labor sentence without benefit of parole, probation, or suspension of sentence. The only issue that remains is the length of sentence. In complying with La.Code Crim.P. art. 894.1(C), the trial judge "need not articulate every circumstance or read through a checklist of items." State v. Anderson, 95-1688, p. 4 (La.App. 3 Cir. 5/8/96), 677 So.2d 480, 483.
The pre-sentence investigation report submitted to the trial judge confirmed the defendant's nine prior convictions as well as a 1998 arrest for shoplifting. It further established that the defendant's probation had been revoked on April 10, 2000, and the defendant was in the custody of the Department of Corrections serving the original five-year hard labor sentence. According to the information in the report, *790 the defendant was twenty years old at the time of the offense, was a high school graduate, had attended the University of Southwestern Louisiana for approximately one year, and was married. The report further reflected that the defendant had attempted military service beginning in May of 1996, but he was discharged in September of the same year for his inability to adjust to military life.
In imposing sentence, the trial judge stated the following:
Let me say, as I mentioned before, that, in considering this, the sentence to be imposed, I, of course, considered what the legislature prescribed in terms of a sentence. I've also considered the factors listed under 894.1.
I have considered, in imposing sentence, the question of undue risk of commission of another crime, and I will tell you that I am deeply concerned by the fact that the prior offense for which Mr. Roberts was convicted also involved juvenile pornography, although it was amended down to an obscenity charge, and that those offenses were committed while he was on probation for that offense in fact, within a short number of days.
While I agree with you, Mr. Thibodeaux, that I think that what Mr. Roberts needs is treatment, he had that opportunity for treatment in light of his probation for his prior offense. And, in spite of that opportunity that was given to him, he repeated the offense within a short time after that sentence was imposed.
So it appears clear to the Court that there is an undue risk of commission of another crime and that correctional treatment would be most effective. I will tell you that I am going to request And all I can do is request, because I have made inquiries about the type of treatment that might be available for Mr. Roberts within the Department of Corrections and I did not really receive satisfactory answers. But I am going to recommend that he bethat consideration be given to serving sentence in an institution which would offer him some counseling and treatment, if that is available.
As I said, I think that alternatives have been attempted in this case, in the form of probation, but that it has not been effective. And, also, I mention the fact that, under this particular statute under which Mr. Roberts was convicted, a suspended sentence is not allowed.
The trial judge then sentenced the defendant.
The record reflects that the trial judge adequately stated the considerations taken into account and the factual basis for the sentence imposed. Additionally, we find that the sentence imposed is neither grossly out of proportion to the seriousness of the offense nor merely imposed for needless infliction of pain and suffering. It does not shock the sense of justice, and the trial judge did not abuse her wide discretion in sentencing the defendant. Having reached these conclusions, it follows that the trial judge did not err in denying the defendant's motion for reconsideration of sentence. Therefore, we find no merit in these assignments of error.

DISPOSITION
For the foregoing reasons, we affirm the defendant's conviction and sentence in all respects.
AFFIRMED.