# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1183


STATE OF LOUISIANA

VERSUS

JOHNNY LEE BELL

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 270,629
HONORABLE W. ROSS FOOTE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## J. DAVID PAINTER
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Michael G. Sullivan, Glenn B. Gremillion and J. David Painter, Judges.

**AFFIRMED.**


**James W. Beane, Jr.**
**803 Florida Avenue, NW**
**Washington, DC 20001**
**Counsel for Bell-Appellant**
     **JOHNNY LEE BELL, JR.**


**Loren Lampert**
**P.O. Box 1472**
**Alexandria, LA 71309**
**Attorney for the Appellee**
     **STATE OF LOUISIANA**

**PAINTER, Judge.**

The Defendant, Johnny Lee Bell, appeals his conviction for second degree murder.

On June 23, 2003, Bell and Demetrius Hines argued, then parted. Later the same day, Bell came to Hines' house with a shotgun and shot and killed Hines.

Bell was arrested and charged with second degree murder, a violation of La.R.S. 14:30.1. He entered a plea of not guilty and waived his right to a trial by jury. After a bench trial, Bell was found guilty as charged. A Motion for New Trial was filed and denied. Bell was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. A Motion to Reconsider Sentence was filed and denied. Bell appeals asserting four assignments of error.

WAIVER OF JURY TRIAL

Bell alleges that the trial court erred in permitting his trial counsel, Bridgett Brown, to waive his right to a jury trial where the court was aware that counsel was not performing her duties as defense counsel. He argues that because the trial court did not fully advise him of his right to a fair trial, his waiver was not knowingly and intelligently made. Bell asserts that much of the discussion leading up to the waiver of trial by jury was conducted off the record and out of his presence, and that the trial court engaged in a limited colloquy with him and left it to Ms. Brown to advise him of his rights when the trial court was aware that Ms. Brown was not faithfully carrying out her duties as defense counsel.

On January 5, 2004, the trial of this matter was continued at Bell's request and reset for March 1, 2004. On March 1, 2004, Bell was present in court along with his counsel, Ms. Brown. At that time, Ms. Brown informed the trial court that Bell

1

wished to waive his right to trial by jury. The trial court then addressed Bell and the

following exchange occurred:

> BY MS. BROWN:       Your Honor, Mr. Bell wishes to waive his right
> to a jury trial.
>
> BY THE COURT:       Okay. Mr. Bell, you're in court today with
> your attorney, Ms. Bridgett Brown. Has she explained to you your
> absolute right to a trial by jury?
>
> BY MR. BELL:    Yes sir.
>
> BY THE COURT:       You understand that if you waive the right to
> a trial by jury, then that's irrevocable and it's then it's me trying the case
> on the . . .own?
>
> BY MR. BELL:    Yes.
>
> BY THE COURT:       Y'all gone over the tactics and the techniques
> and what you would want, jury versus judge?
>
> BY MR. BELL:    Yes sir.
>
> BY THE COURT:       I'm, I'm making sure that we understand that
> this is a knowing decision, that you're making on this. I'm not asking
> your reasons, I want to make sure that you have a good reason to waive
> the jury.
>
> BY MR. BELL:    Yes.
>
> BY THE COURT:       Okay. And this is done with the advice of
> counsel?
>
> BY MR. BELL:    Yes.
>
> BY THE COURT:       Okay. Well, we will show it bound over then
> for trial in the morning. Ahm, I'm gonna have to check back with y'all
> a little later in the day, because if I have a jury trial coming . . . how,
> how long of a trial will this be?

In *State v. Roberts*, 01-0154, p. 13 (La.App. 3 Cir. 10/3/01), 796 So.2d 779,

788 *writ denied*, 01-2971 (La. 9/20/02), 825 So.2d 1163, this court discussed the law

applicable to waiver of a trial by jury stating the following:

> Louisiana Code of Criminal Procedure article 780(A) provides in
> pertinent part that "[a] defendant charged with an offense other than one
> punishable by death may knowingly and intelligently waive a trial by

2

jury and elect to be tried by the judge." Additionally, a defendant, with the permission of the trial judge, "may exercise his right to waive trial by jury at any time prior to the commencement of trial." La.Code Crim.P. art. 780(B). While the trial judge must determine if the defendant's jury trial waiver is knowing and intelligent, that determination does not require a *Boykin*-like colloquy. *See State v. Frank*, 549 So.2d 401 (La.App. 3 Cir.1989).

> As in the case of other significant rights, waiver of trial by jury is valid only if the defendant acted voluntarily and knowingly. *State v. Kahey*, 436 So.2d 475, 486 (La.1983); *State v. Wilson*, 437 So.2d 272, 275 (La.1983). While the Louisiana Supreme Court has rejected an absolute rule which would require the trial judge to personally inform the defendant of his right to a jury trial, *Kahey*, *supra*; *State v. Moya*, 539 So.2d 756, 758 (La.App. 3d Cir.1989), the preferred method of ensuring the right is for the trial judge to advise the defendant personally on the record of his right to a jury trial and to require the defendant to waive the right personally either in writing or by oral statement in open court on the record. *State v. Wilson*, 437 So.2d at 275; *State v. Jones*, 537 So.2d 1244, 1247 (La.App. 4th Cir.1989); *State v. Moya*, 539 So.2d at 758.

*State v. Abbott*, 92-731, pp. 3-4 (La.App. 4 Cir. 2/25/94), 634 So.2d 911, 913-914.

In this case, Ms. Brown informed the trial court that Bell wished to waive his right to trial by jury. Although the trial court did not advise Bell of his right to trial by jury, it was not required to personally inform him of this right. Bell answered affirmatively when the trial court asked if his attorney had explained that right to him. It is clear, from the record, that Bell and his counsel consented to the waiver of the right to trial by jury. There is nothing in the transcript of this hearing regarding any discussion that took place off the record and out of the Bell's presence. Additionally, there is nothing that indicates that Ms. Brown was not faithfully carrying out her duties as defense counsel. Accordingly, we find no error in the trial court's decision to allow Bell to waive his right to a jury trial.

DENIAL OF RECESS

3

Bell also contends the trial court erred in failing to grant Ms. Brown's Motion for Recess, where Ms. Brown was clearly not ready to defend him. In support of this argument, Bell alleges that Ms. Brown "stated clearly and concisely that she was not prepared to present a defense on Mr. Bell's behalf" and she needed an additional three months to prepare. After reviewing the record his court has been unable to locate any request for a three month recess. Further, Bell makes a general allegation but does not articulate in what way counsel was unable to sufficiently prepare or present his defense.

Trial in this matter commenced on March 2, 2004, the day after Bell waived his right to trial by jury. Once the case was called, Ms. Brown informed the trial court that she was ready to proceed. She then moved to have the witnesses sequestered. After the witnesses were sworn, Ms. Brown informed the trial court that there was information that she would like to proffer for the record. Ms. Brown then informed the trial court of how many cases she had been appointed through the Public Defender's Office. Ms. Brown made the following comments regarding Bell's case:

> The Bar, the State, which our State Bar Ethics Rules say that I could not possibly, ah, adequately represent a defendant if I have more than two hundred felony cases. That includes counts, they, they're talking about two hundred counts. At the time that I received Mr. Bell's case I already had, I was already, already over the, the caseload number by one hundred and fourteen cases. That does not include counts. So, at this point I want to emphasize to the Court, that there is no way, according to the ethical standards by the Louisiana Bar Association, that I could properly represent Mr. Bell, or put a proper defense forward for him, ah, in this case or any other, after I reach the two hundred level. I would also add that, ah, this, this statement is given and this affidavit is proffered as (word not distinguishable) to the pending case of, ah, "State versus Dolores Jones" where I am first chair in her capital case of, ah, first degree murder. Ah, I provided this information to this Court, because I am in essence telling the Court, that the State of Louisiana's decided and there's no way I can give Mr. Bell an adequate defense. As an addendum to that I would add that I met Mr. Bell for the second time on, ahm, ah, was it Saturday? Saturday. I spoke with Mr. Bell briefly when I initially got, when he was case number three hundred fourteen assigned to me, ah, the, the day or so after the arraignment. I was in

4

court for a number of other Public Defender matters, and while I was here, I went back to the holding cell and he said, my name is Johnny Bell, you're my court appointed lawyer; and I talked to him a few minutes briefly there. I actually met with him, ah, Saturday, this past Saturday, which would've been the, ah, which [was] some three days ago, ah, and extensively for the first time. Ah, that is not because I have not desired to sit down with Mr. Bell. Ah, on yesterday, for example, which was March 1st, I was in court from, ah Nine O'clock yesterday morning until around Six O'clock, 6:00 PM yesterday afternoon. Ah, I, all with Public Defender cases, and I say that so the Court will be aware that, ah, there is no way that I would have time; as I did not in Mr. Bell's case, to adequately defend him and the other one hundred and fourteen people who are above the two hundred legal limit for me to be appointed to do and, provide the representation for. And, and having Mr. Bell's case this morning, or any other morning that is, while I've got another, ah, three hundred and seventy-three cases still pending, and preparing the defense for him, I would have to have, ah, not only the adequate time and the, the, the preparation, I would have to have an opportunity to interview witnesses, to interview private defenses for them, all of which are now supposed to be available to him and all the other defendants that I represent. If divide the number of hours in a day, by the number of cases that I had, that I have, I would be allowed according to time and, just on time, to devote eleven minutes per date to each of the Public Defender files that I have. Ah, you know, it, it's just not humanly possible for me to do that.

The trial court then granted a two hour recess to allow Ms. Brown to determine what she needed in order to prepare a defense.

Once court reconvened, Ms. Brown filed a Motion for Recess in open court. Therein she alleged that due to her "crippling caseload she has been unable to interview necessary witnesses, research relevant case law and other necessary matters all of which are necessary to give Bell the defense to which he is constitutionally entitled." Ms. Brown then presented a list of things that needed to be done to prepare a defense in this case. The trial court recessed in order to review the list. After the recess, the trial court concluded that it was inclined to grant a limited recess because it was satisfied that Ms. Brown "needs to build a record and wants, wants to build a record." Ms. Brown then presented argument to the court. The trial court then granted a twenty-four-hour recess and stated that "in the event things do develop on

5

a factual basis that requires a further recess, ah, I always have within my power to do that." Ms. Brown then objected to the length of the recess.

On March 3, 2004, Ms. Brown made an oral motion to recess asking for a recess in order to investigate whether she represented the deceased and his father in a civil action. The motion was denied. Ms. Brown later "reiterated" her argument that twenty-four hours was not sufficient to prepare a defense. The trial court then denied what it termed an objection, stating the following: "But the objection, it is reurged that the twenty-four hours is insufficient, I think you objected to that yesterday, will be noted and, ah, denied as well."

Bell contends that the trial court erred in failing to grant Ms. Brown's Motion to Recess. However, Bell does make clear to which motion he is referring. As noted above, the trial court granted Ms. Brown's initial Motion for Recess. However, the court granted only a twenty-four-hour recess. In brief to this court, Bell has not complained about the length of the recess granted by the trial court. Inasmuch as the trial court granted Bell's Motion for Recess and merely denied objections based on the length of the recess, we find no error in the trial court's action in this regard.

Furthermore, even if Bell is contesting the denial of the subsequent motion to recess, he is not entitled to relief on this basis. The basis of this motion, to permit time to evaluate a possible conflict with a potential State witness, is discussed in more detail our analysis of the next assignment of error. Ms. Brown presented information concerning the potential conflict to the trial court and was able to present the claims which allegedly required more time to investigate. Furthermore, the witness was never called to testify. As a result, Bell has failed to show that he was entitled to a recess on this ground.

CONFLICT OF INTEREST

6

Bell further contends that the trial court erred in denying Ms. Brown's motion to be relieved of further representation due to a conflict of interest where Ms. Brown represented the decedent's father in a civil matter.

Ms. Brown filed a "Motion to Determine Whether Attorney Bridgett Brown Should Be Relieved from Further Representation of Defendant Due to a Conflict of Interest" on March 3, 2004. In that motion, she alleged that she represented George Thomas, "one of the state's main witnesses" and the decedent's father, in a civil matter entitled "*Thomas et al v. Colfax Company*."

Ms. Brown informed the trial court that she thought she represented Mr. Thomas in a class action which was filed on behalf of seventeen thousand people. She then informed the court that the State had approached Mr. Thomas and questioned him about the matter and that Mr. Thomas indicated that she represented him. Ms. Brown stated that there were three people named George Thomas in the lawsuit and one named Demetrius Hines. Ms. Brown then informed the court that the seventeen thousand people were divided between two law suits.

After hearing the argument of Ms. Brown and the State, the trial court concluded the following:

> And I just can't get this past the remote area on its face, without a showing that he's the leader of the pack and there's inside information and all the rest of the stuff done. . . . And, ah, I don't know that we have trial dates set, we have depositions set, we have . . . there's, there's no connection to it, so I jumped in, without a showing that there is some form of actual conflict, being one of seventeen thousand plaintiffs who's face you remember, in an action that is just now progressing, versus being a witness in a factual situation here, ah, I think is too remote.

Ms. Brown then asked if the ruling applied to the deceased, Demetrius Hines, and the trial court made the following comments:

> As far as, if it is the same person, and there is an interest that would come through inheritance laws, assuming there's no intervening child or marriage that's there, that again is so remote, we're dealing not with

7

legal theories, causes of actions, we're dealing with a factual scenario of who saw what and where. And, I have no doubt in the ability to do a factual cross-examination, ah, on that matter, ahh, the other's even two steps more removed. We don't know if they're gonna renounce succession, we don't know . . . There's, there's just, there are too many things in it. I just think that in this particular case, backing up and looking at it, the reality are (sic), we're dealing with factual determinations not legal theories, so in answer to the question all the way around, yes it applies to both. So you can make one objection to both.

Ms. Brown then objected to the ruling. The trial court again stated that trial would proceed inasmuch as the conflict "would fall under the category of it is so remote" and the need to proceed in criminal trials. Ms. Brown then objected. The trial court ruled that the requirements of individual cross-examination would not create a conflict that would rise to the levels in "*Sisco* and *Wheat*." As noted earlier, Ms. Brown then made an oral motion to recess in order to investigate whether she represented the deceased and his father in a civil action, which was denied.

The State informed the trial court that it had reviewed Civil Docket Numbers 214,913 and 214,915 and did not find the name Ms. Brown, George Thomas, or Demetrius Hines in either of them. The State indicated that it did not pull the "J & M Poultry" file because it did not know it existed since it was not mentioned in Ms. Brown's motion. The trial court then took judicial notice of the files. Ms. Brown then objected to the trial court's ruling.

Ms. Brown subsequently made an oral motion for the trial court to appoint an attorney to cross-examine Mr. Thomas if he was called as a witness. The trial court granted the motion.

The State called its first witness, Dr. George McCormick. After Dr. McCormick's testimony, Mr. Rodenbeck, head of the local Indigent Defender Board (IDB), arrived in court and informed the trial court that it was not the practice of the IDB to appoint co-counsel. The trial court then appointed Mr. Rodenbeck to serve

8

as co-counsel for the purpose of cross-examining any witness that posed a potential conflict. Mr. Rodenbeck objected to the appointment and the trial court overruled the objection. Mr. Thomas was not called as a witness by either the State or Ms. Brown.

> The issue of conflicting loyalties usually arises in the context of joint representation, but it can also arise "where an attorney runs into a conflict because he or she is required to cross-examine a witness who is testifying against the defendant and who was or is a client of the attorney." *State v. Tart*, 94-0025, p 19 (La.2996), 672 So.2d 116, 125; *State v. Kirkpatrick*, 443 So.2d 546, 552 (La.1983). In a trial

context, regardless of how the conflict of interest issue arises, the trial court has two options to avoid a conflict of interest: appoint separate counsel or take adequate steps to ascertain whether the risk of a conflict of interest is too remote to warrant separate counsel. *Tart*, 94-0025 at 19-20, 672 So.2d at 125 (relying on *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)); *State v. Edwards*, 430 So.2d 60, 62 (La.1983); *State v. Marshall*, 414 So.2d 684, 687-88 (La.1982). Failure to do one or the other in a case in which an actual conflict exists requires reversal. *Holloway*, 435 U.S. at 480, 98 S.Ct. at 1181; *State v. Carmouche*, 508 So.2d 792, 805 (La.1987) (on reh'g). As we stated in [*State v.*] *Franklin*, 400 So.2d [616] at 620, "If an actual conflict exists, there is no need for a defendant to prove that he was also prejudiced thereby."

> . . . .

> This court in *State v. Kahey*, 436 So.2d 475, 485 (La.1983), defined an actual conflict of interest as follows, accepting the definition set forth in *Zuck v. Alabama*, 588 F.2d 436, (5th Cir.1979), *cert denied*, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979):

>> If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interest of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to the other client.

> This court has consistently held that a defense attorney required to cross-examine a current or former client on behalf of a current defendant suffers from an actual conflict. *See, e.g.*, *State v. Carmouche*, 508 So.2d at 804; *Franklin*, 400 So.2d at 620 ("[W]e must agree with the defendant's attorney, and with the trial judge, that an actual conflict arose when the state called [counsel's former client] to the stand. [Counsel] was put in the unenviable position of trying zealously to represent the defendant at trial while simultaneously trying to protect the confidences of a former client who was testifying for the state against the defendant."); *see also* Dane S. Ciolino, ed., *Louisiana Rules of Professional Conduct*, Rule 1.7 comment 3 (L.S.B.A.2001) ("As a general proposition, loyalty to a client prohibits undertaking

representation directly adverse to that client without that client's consent.").

In *Carmouche*, a capital case in which this court reversed the conviction and sentence of death, we applied *Kahey* and *Zuck v. Alabama* and concluded that the defendant's counsel was confronted with an actual conflict of interest when another of his clients was arguably the most damaging prosecution witness against the defendant. There, the defendant's counsel was served on the last day of trial with notice that the State intended to introduce inculpatory statements the defendant had allegedly made to a jail cellmate, who had agreed to testify only the day before. In objecting to the timing of the notice, counsel also noted the possibility of a conflict of interest because he was also representing the prosecution witness in an unrelated criminal matter. Counsel did not, however, not seek to be relieved of representation, request a recess for developing impeachment evidence, or move for a mistrial, and the witness proceeded to take the stand to give damning evidence against the defendant. Nonetheless, in determining whether counsel was faced with a conflict of interest, we held that counsel's statement was sufficient to alert the trial court that an actual conflict existed and that counsel could have felt required to balance the competing interests of his two clients. *Carmouche*, 508 So.2d at 804. We then noted that, once a conflict of interest is deemed to exist, it is presumed that the conflict will affect defense counsel's performance. *Id*. at 805. We eventually went on to conclude in *Carmouche* that the trial court failed to take adequate steps to protect the defendant's Sixth Amendment right to conflict-free counsel, necessitating the reversal of his conviction and sentence. *Id*.

In the instant case, we find that a similar result is mandated, primarily because the record is silent as to the particulars of defense counsel's representation of Deputy DeLouche and his wife. . . .

In our view, then, given that two judges recognized that a waiver of conflict-free counsel was required on account of appointed counsel's dual representation of the defendant and Deputy DeLouche, and given that appointed counsel's other client, Deputy DeLouche, was one of the most important identity witnesses against the defendant, i.e., the head of the investigative task force who would be testifying at trial as to the defendant's various inculpatory statements connecting him to the scene of the crime in the absence of physical evidence, the only reasonable conclusion we can reach based on the record before us is that counsel was necessarily confronted with an actual conflict of interest when she was called upon to cross-examine her client Deputy DeLouche at the trial of her other client, the defendant.

*State v. Cisco*, 01-2732, pp. 17-18 (La. 12/3/03), 861 So.2d 118 at 129-32.

10

In support of his argument, Bell cited, *Cisco*, 861 So.2d 118. However, the case currently before us is distinguishable from *Cisco*. In this case, the trial court took proper steps to protect the Bell's rights. The trial court held a hearing on the issue wherein it found that any conflict was too remote. The trial court subsequently decided to appoint conflict-free counsel to cross-examine Mr. Thomas if he testified. However, Mr. Thomas never testified at trial. Accordingly, an actual conflict of interest never arose. Additionally, the State, at the hearing on Bell's Motion for New Trial, indicated that it did not call Mr. Thomas as a witness in order to avoid a conflict. Therefore, we find no error in the trial court's determination with regard to a possible conflict.

NEW TRIAL

In his second assignment of error, Bell contends that the trial court erred in failing to grant his Motion for New Trial, where his trial counsel failed to properly prepare to defend him.

Ms. Brown filed a Motion for New Trial on March 25, 2004 asserting that a new trial should be granted under La.Code Crim.P. art. 851(1) because the verdict was contrary to the law and the evidence and under La.Code Crim.P. art. 851(5) because the ends of justice would be served by the granting of a new trial.

In court, Ms. Brown argued that Bell never had a trial, reurged her argument that she was not prepared to defend him, and asserted that she spent eleven minutes with Bell prior to trial. The trial court then heard argument from the State and rebuttal from Ms. Brown and denied the motion, making the following comments:

> Mr. Lampert, you were correct, that we did have a substantive pre-trial. We talked both procedure and substance and plea-bargain. That there were put on the record a knowing waiver of a jury, after advice of counsel was rendered. There was possible defenses that were presented. There were, obviously, discussions between both counsel, showing a familiarity with facts, I'm not prepared to concede that she

11

knew the facts better than you, because it seemed to be a fairly good give and take at both sides, with the factual issues and the problems that these particularly facts presented. As I also stated in my reasons, I can understand why there were technical and procedural defenses put up, because after hearing the evidence, ah, there was no legal defense, ah, imaginable. So, I can understand that. . . . If y'all will remember also, that I stated in my reasons of overruling, continuing with the trial at the time, that I reserved myself the right to miss-try it if at any time I felt the lack of preparation had become an issue. Ah, so, it's not a cut decision that was not revisited, it was a decision that was weighed throughout the course of the trial. In watching the trial proceed, with the cross-examination by Ms. Brown of inconsistent statements that she spotted immediately with tr [sic], it became evident to me that there was trial preparation allowed in this, and that Ms. Brown was familiar with the facts and surrounding documents. That there had been open file discovery, that she had all the information; I don't know when she read it, don't know her trial preparation procedures. But I did find that there was no reason throughout the course of the trial to continue it. . . . But based upon the working knowledge prior to the time, based upon the trial tactics that were used, based upon a very simple fact scenario that was presented, and based upon the information presented by Ms. Brown of what she would need to adequately defend, this Court not only allowed it to proceed, but allowed it to proceed to judgment. Ah, so I do not find that Mr. Bell has not had a trial, I find that he did have a trial; that at the trial the evidence was presented, contested and submitted; I found in a bench trial that he was guilty; and do not feel that we need to revisit that.

Ms. Brown objected to the trial court's ruling.

In brief to this court, Bell cites the law regarding La.Code Crim.P. art. 851(5) and argues that Ms. Brown failed to prepare a defense on his behalf. He makes no argument regarding La.Code Crim.P. art. 851(1).

Louisiana Code of Criminal Procedure Article 851(5) states, in pertinent part: "The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."

This court has routinely held that denial of a motion for new trial to serve the ends of justice is not subject to review upon appeal. *State v. Jason*, 01-1428, p. 9 (La.App. 3 Cir. 7/10/02), 820 So.2d 1286, 1292, *citing State v. Prudhomme*, 532

12

So.2d 234 (La.App. 3 Cir. 1988), *writ denied*, 541 So.2d 871 (1989). Therefore, this argument is not reviewable on appeal.

ERROR PATENT

La.Code Crim.P. art 920 provides for the review of all criminal appeals for errors patent on the face of the record as follows:

The following matters and no others shall be considered on appeal:

(1) An error designated in the assignment of errors; and

(2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."

Our review of the record has revealed one possible error patent. The language of La.Code Crim.P. art. 873 requires a delay of at least twenty-four hours between the denial of a motion for new trial and sentencing. Bell filed a Motion for New Trial, which was denied on the same date as sentencing without any indication that the twenty-four-hour delay was waived. However, any error is harmless because Bell received a mandatory life sentence. *See State v. Porter*, 99-1722 (La.App. 3 Cir. 5/3/00), 761 So.2d 115; *State v. Williams*, 617 So.2d 557 (La.App. 3 Cir.), *writ denied*, 623 So.2d 1331 (La.1993).

CONCLUSION

For these reasons, the conviction of Johnny Lee Bell for second degree murder is affirmed.

AFFIRMED.