# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-488


STATE OF LOUISIANA

VERSUS

RICHARD D. JASPER


**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 08-451
HONORABLE FRANK FOIL, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of John D. Saunders, Jimmie C. Peters and Marc T. Amy, Judges.

**AFFIRMED.**


**J. Phil Haney**
**District Attorney**
**300 Iberia Street, Suite 200**
**New Iberia, LA   70560**
**(337) 369-4420**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Walter J. Senette, Jr.**
**Assistant District Attorney**
**500 Main Street, 5th Floor**
**Franklin, LA   70538**
**(337) 828-4100**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Paula C. Marx**
**Louisiana Appellate Project**
**Post Office Box 80006**
**Lafayette, LA   70598-0006**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Richard D. Jasper**

**Richard D. Jasper**
**West Carroll Detention Center**
**Post Office Box 307**
**Epps, LA   71237**
**In Proper Person**

**AMY, Judge.**

A jury found the defendant guilty of aggravated battery. After the State instituted habitual offender proceedings against the defendant, he was adjudicated a third felony offender and sentenced to twenty years at hard labor. The defendant appeals, asserting that the evidence presented at trial was insufficient to support his conviction. For the following reasons, we affirm.

## Factual and Procedural Background

The State initially alleged that the defendant, Richard D. Jasper, committed an aggravated burglary in connection with an attack on Stephen Louviere in Mr. Louviere's home. The charges were amended to aggravated battery and, after a jury trial, the defendant was found guilty on the sole count of aggravated battery. The State instituted habitual offender proceedings, alleging that the defendant was a third felony offender. After a hearing, the trial court initially imposed a sentence of ten years at hard labor on the aggravated battery charge, but found that the defendant was a third felony offender, vacated the original sentence, and imposed a sentence of twenty years at hard labor pursuant to the habitual offender statute. The defendant then made an oral motion for reconsideration of sentence, which was denied by the trial court.

The defendant appeals, asserting as his sole assignment of error that the evidence presented at trial was insufficient to support his conviction. For the following reasons, we affirm.

## Discussion

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, this court reviews all criminal appeals for errors patent on the face of the record. Our review of the record reveals one error patent. The transcript of the habitual offender proceeding does not indicate

that the defendant was advised of his right to remain silent, his right to a hearing, and his right to have the State prove its case against him.

A panel of this court previously addressed the requirement that a defendant be informed of his rights at a habitual offender hearing, stating:

> Although the right to remain silent is not specifically set forth in La.R.S. 15:529.1, in *State v. Johnson*, 432 So.2d 815 (La.1983), *writ granted on other grounds*, 438 So.2d 1113 (La.1983); *appeal after remand*, 457 So.2d 1251 (La.App. 1 Cir. 1984), *appeal after remand*, 471 So.2d 1041 (La.App. 1 Cir. 1985), the Louisiana Supreme Court held this statute clearly recognizes the defendant has the right to remain silent, and the statute implicitly provided defendant should be advised by the court of his right to remain silent. The court in *Johnson*, relying on *State v. Martin*, 427 So.2d 1182 (La.1983), further stated La.R.S. 15:529.1(D) specifically provides defendant shall be advised of his right to a formal hearing and to demand that the state prove its case. This court has held "where a defendant was not advised of his right to remain silent before admitting his prior convictions at a habitual offender hearing, defendant's acknowledgment is insufficient where the acknowledgment is the only proof of prior convictions offered by the state."

*State v. Coleman*, 96-525, pp. 12-13 (La.App. 3 Cir. 10/7/98), 720 So.2d 381, 387.

However, such an omission is subject to harmless error analysis, requiring that this court determine whether the proceedings as a whole were fundamentally fair and afforded the defendant due process of law. *State v. Bias*, 10-1440 (La.App. 3 Cir. 5/4/11), 63 So.3d 399. In cases where the defendant neither admitted the allegations of the habitual offender bill of information nor acknowledged his prior offenses and where the state offered sufficient evidence regarding the defendant's identity and prior convictions, this court has previously found that any error in failing to inform the defendant of his rights was harmless. *Bias*, 63 So.3d 399; *State v. Washington*, 96-656 (La.App. 3 Cir. 1/15/97), 687 So.2d 575.

In this case, a habitual offender/sentencing hearing was held three months after the State filed the habitual offender bill of information. The State sought to have the defendant adjudicated a third felony offender, alleging that the defendant had been

2

previously convicted in the State of Missouri of two counts of distribution of a controlled substance (cocaine) and one count of burglary in the first degree.

In support of these allegations, the State introduced into evidence the transcript of the defendant's testimony at trial from May 4, 2010. In that testimony, the defendant admitted that he had prior convictions for two drug-related offenses and one for "stealing." We note that the trial court presided over both the defendant's jury trial on the instant charge and the habitual offender hearing. Further, the State introduced the bill of information, minutes, trial transcript and sentencing transcript from the defendant's conviction on two counts of distribution of a controlled substance (cocaine) under docket numbers CR592590FX and CR592335FX in the Circuit Court of Missouri, Buchanan County. The State also introduced the court record from the defendant's burglary in the first degree conviction under docket number CR2921FX from the Circuit Court of Missouri, Andrew County. Additionally, the State introduced a "pen pack" from the State of Missouri, which contained the defendant's dates of convictions, incarcerations, and discharges from custody and supervision. The pen pack contained a picture of the defendant and indicates that the defendant's parole on his previous convictions was terminated on December 19, 2005. No objection was made to the State's evidence.

The defendant testified at the habitual offender/sentencing hearing, and admitted to his prior convictions. In this case, the defendant's admission was voluntary and he was represented by counsel. Further, a full habitual offender hearing was held and the State offered sufficient other evidence to support the trial court's determination that the defendant was a third felony offender. *See State v. Samuel*, 08-100 (La.App. 3 Cir. 5/22/96), 984 So.2d 256, *writs denied*, 08-1419, 08-1487 (La. 1/20/09), 1 So.3d 493, 495. Thus, we find that the trial court's omission in advising

3

the defendant of his rights was harmless error and he was afforded a fundamentally fair hearing.

*Sufficiency of the Evidence*

In his sole assignment of error, the defendant contends that the evidence adduced at trial was insufficient to support his conviction for aggravated battery. He specifically argues that the State's witnesses did not offer credible testimony and that the evidence shows that he acted in self-defense.

When a sufficiency of the evidence claim is raised on appeal, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Macon*, 06-481 (La. 6/1/07), 957 So.2d 1280 (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781). Further, the trier of fact is responsible for determining the weight of the evidence and may accept or reject, in whole or in part, the testimony of any witness. *Id.* The appellate court should not assess credibility or re-weigh the evidence and may only intrude upon the fact-finding function of the jury to the extent necessary to satisfy the *Jackson* standard of review. *Id.*

The defendant was convicted of aggravated battery. Louisiana Revised Statutes 14:34 defines aggravated battery as "a battery committed with a dangerous weapon." Battery is "the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another." La.R.S. 14:33. Further, as defined in La.R.S. 14:2(A)(3), a "dangerous weapon" is "any gas, liquid, or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." Although a weapon may be "inherently dangerous," the "dangerousness" of the instrumentality based on the manner in which it is used is a fact for the jury to determine. *State v. Ellis*, 95-1005

4

(La.App. 5 Cir. 3/26/96), 672 So.2d 1007, citing *State v. Bonier*, 367 So.2d 824 (La.1979).

Additionally, in this case, the defendant contended that he acted in self-defense. Louisiana Revised Statutes 14:19 addresses the use of force or violence in defense, stating:

A. The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this Section shall not apply where the force or violence results in a homicide.

B. For the purposes of this Section, there shall be a presumption that a person lawfully inside a dwelling, place of business, or motor vehicle held a reasonable belief that the use of force or violence was necessary to prevent unlawful entry thereto, or to compel an unlawful intruder to leave the premises or motor vehicle, if both of the following occur:

(1) The person against whom the force or violence was used in was in the process of unlawfully or forcibly entering or had unlawfully and forcibly entered the dwelling, place of business, or motor vehicle.

(2) The person who used force or violence knew or had reason to believe that an unlawful and forcible entry was occurring or had occurred.

C. A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using force or violence as provided for in this Section and may stand his or her ground and meet force with force.

D. No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used force or violence in defense of his person or property had a reasonable belief that force or violence was reasonable and apparently necessary to prevent a forcible offense or to prevent the unlawful entry.

However, an aggressor cannot claim self-defense, "unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict." La.R.S. 14:21. It is the defendant's burden in a non-homicide to establish by a preponderance of the evidence

that self-defense was justified.  *State v. Baker*, 08-54 (La.App. 3 Cir. 5/7/08), 986 So.2d 682.

The State and the defendant offered two substantially different versions of the events leading to the stabbing of Mr. Louviere.  The State contended that, on January 8, 2008, after the defendant found that the windows on his antique car had been broken, he drove in a rage to Mr. Louviere's house, burst in uninvited and, after fighting with Mr. Louviere and his fiancée, Roxanna Garza,[1] cut and/or stabbed Mr. Louviere in the face, neck and chest.  The State contends that the defendant then fled from Mr. Louviere's house and was apprehended by the police after he sought to turn himself in.

Mr. Louviere testified that he lived on Cromwell Drive with his fiancée and young granddaughter and that the defendant used to live next door to them.  According to Mr. Louviere, he had just returned home on his break from work when the defendant burst into his house.  Ms. Garza testified that, almost immediately, the defendant started "swinging at" her and hit her on the side of her neck and her head.  Both Ms. Garza and Mr. Louviere testified that, after Mr. Louviere tried to intervene, the defendant hit Mr. Louviere and the two ended up fighting.  Mr. Louviere also testified that when he demanded to know what the defendant wanted, the defendant said "my car, my car, my car."  Mr. Louviere said he did not know what the defendant meant and denied doing anything to the defendant's car.

According to his testimony, after the defendant said "this is a knife MF, this is a knife MF, do you feel it, do you feel it," Mr. Louviere went into his bedroom and retrieved a rifle.  Mr. Louviere testified that he cocked the rifle, which ejected an empty cartridge, in order to get the defendant's attention.  However, he testified that

---

[1] The record variously spells Ms. Garza's name as "Roxanne" or "Roxanna."  We adopt the spelling from the jury transcript.

6

he did not point the rifle at the defendant and, in any case, it was unloaded. He testified that the defendant refused to leave the house and pushed Ms. Garza into him. Ms. Garza testified that the defendant then slashed Mr. Louviere's throat. According to her testimony, the two men struggled, and the defendant ended up on top of Mr. Louviere on the couch. Both Ms. Garza and Mr. Louviere testified that the defendant then cut Mr. Louviere on the face and stabbed him in the chest. Mr. Louviere's testimony was that the defendant then fled.

Ms. Garza corroborated Mr. Louviere's testimony about the defendant's behavior and Mr. Louviere's actions with the rifle. Additionally, she testified that, before Mr. Louviere got the rifle, the defendant was swinging a "shiny object" but that she did not realize what it was. Mr. Louviere's granddaughter called 9-1-1. Mr. Louviere was taken to the hospital, and he testified that his neck and chest wounds required surgical staples, stitches and plastic surgery. The State entered photographs of Mr. Louviere's wounds into evidence.

The defendant's supervisor, Scottie Munnerlyn, testified that, on the date of the incident, he spoke with the defendant on the telephone. According to Mr. Munnerlyn, the defendant was upset and told Mr. Munnerlyn he was "going to Cromwell to cut somebody." Mr. Munnerlyn was sufficiently concerned that he called 9-1-1[2] and he decided to drive to Cromwell Drive to attempt to intervene. Mr. Munnerlyn testified that, when he was about halfway there, the defendant called and told him that "it's not good," that he "cut him [and] there's blood everywhere." The defendant wanted to turn himself in, so Mr. Munnerlyn made arrangements for the defendant to be taken into custody at a nearby truck stop.

---

[2] Copies of Mr. Munnerlyn's 9-1-1 calls were submitted into evidence but were not played for the jury.

7

The State also offered into evidence a video of the defendant's custodial interrogation, which was played for the jury.[3] Therein, the defendant stated that he knew Mr. Louviere was involved in breaking the windows out of the defendant's car. He also stated that Mr. Louviere knew the reason that the defendant came to Mr. Louviere's house. However, the defendant did not want to discuss the details because he might need to "make a deal" later. The defendant stated that he would probably serve some time in connection with the incident but that he did not want to serve "a whole bunch."

In contrast to the State's version of the crime, the defendant contended that, after he found that the windows on his car had been broken out, he went to Mr. Louviere's home to confront him because, if Mr. Louviere had not caused the damage himself, he knew who did. The defendant testified, claiming that, although he yelled at Mr. Louviere, he was not physically aggressive until Mr. Louviere put the barrel of a rifle up to his head and cocked it. The defendant contended that his actions thereafter, including cutting Mr. Louviere, were in self-defense.

According to the defendant's testimony, after he found that his windows had been broken, he drove probably "100 miles an hour" from Broussard to Mr. Louviere's residence on Cromwell Drive in Coteau. The defendant conceded that he entered Mr. Louviere's house without permission, but stated that he had not needed permission to enter in the past. The defendant denied that he got into any physical confrontation with Ms. Garza and contended that her testimony to the contrary was because she was lying. According to the defendant, after he asked Mr. Louviere if he knew what happened to the defendant's car, Mr. Louviere responded that he did not

---

[3] Pursuant to a pre-trial ruling, only the first nine minutes and thirty-one seconds of the video was played.

break the defendant's windows. The defendant testified that he started yelling at Mr. Louviere, and that Mr. Louviere started yelling and shoving him.

The defendant claimed that, at this point, he sat down in the living room to try and figure out what was going on. According to the defendant, Mr. Louviere put a rifle against the defendant's head and told Ms. Garza to get back because he was going to blow off the defendant's head. The defendant claimed that he heard a "click" as Mr. Louviere pulled the trigger and saw a cartridge hit the floor. The defendant testified that, because he thought Mr. Louviere was trying to kill him, he grabbed the rifle, cutting himself on the rear rifle sights. He further testified that pulled out his work knife and slashed at Mr. Louviere. He contended that he thought he cut Mr. Louviere's chest, but that he cut his neck instead. He claimed that, because Mr. Louviere refused to put down the gun, they kept fighting.

According to the defendant, Mr. Louviere and Ms. Garza never told him to leave. He also contended that he would have never taken out the knife if Mr. Louviere had not gotten his rifle. The defendant testified that he did not remember telling Mr. Munnerlyn that he was going to cut someone, but he did not deny that he did so.

Our review of the record reveals that the evidence, viewed in the light most favorable to the prosecution, is sufficient to establish the elements of aggravated battery, i.e., that the defendant intentionally cut Mr. Louviere with a knife. The State and the defendant offered substantially different versions of the altercation at Cromwell Drive. We note that the defendant claimed that he acted in self-defense, however, it was the defendant's burden to prove this affirmative defense.

Although the defendant contends that the testimony given by State's witnesses was "incredible," credibility determinations are the province of the jury, which could have accepted the State's witnesses' version of the crime. Further, it was within the

9

jury's purview to find that the defendant was the aggressor in the altercation and that he did not withdraw and, thus, reject the defendant's contention that he acted in self-defense. *See State v. Lafitte*, 10-1253 (La.App. 3 Cir. 5/11/11), 63 So.3d 1195; *Baker*, 986 So.2d 682.

This assignment of error is without merit.

**DECREE**

For the foregoing reasons, we affirm the defendant's convictions and sentence.

**AFFIRMED**.