# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 11-1256

STATE OF LOUISIANA

VERSUS

LETRAKUS TYLER
A/K/A TREY TYLER

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 124350
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of James T. Genovese, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

AFFIRMED.

Michael Harson
District Attorney − Fifteenth Judicial District
James Nathan Prather, Jr., Assistant District Attorney
Post Office Box 3306
Lafayette, Louisiana 70502-3306
(337) 232-5170
COUNSEL FOR APPELLEE:
    State of Louisiana

**Annette Fuller Roach**
**Louisiana Appellate Project**
**Post Office Box 1747**
**Lake Charles, Louisiana 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Letrakus Tyler a/k/a Trey Tyler**

**GENOVESE, Judge.**

In this criminal case, Defendant, Letrakus Tyler, a/k/a Trey Tyler, appeals his convictions of aggravated rape, attempted first degree murder, and aggravated burglary. He assigns as error insufficient evidence to support his conviction of attempted first degree murder, trial court error in allowing him to waive his right to a jury trial, and double jeopardy when he was convicted of both aggravated burglary and aggravated rape. For the following reasons, we affirm Defendant's convictions in their entirety and instruct the trial court to inform Defendant of his post-conviction relief rights.

## FACTS AND PROCEDURAL HISTORY

On March 8, 2009, Defendant entered the home of D.C.,[1] a ten-year-old girl, through her bedroom window and raped her. During the act of rape, Defendant held his hand over D.C.'s mouth, held her neck, tried to smother her with his shirt, threatened to kill her, and struck her several times on the back. Defendant was the ex-boyfriend of D.C.'s mother, and a protective order was in effect at the time of the offenses.

Defendant was charged on May 13, 2009, by grand jury indictment with aggravated rape, a violation of La.R.S. 14:42; attempted first degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30; and, aggravated burglary, a violation of La.R.S. 14:60. Defendant entered a plea of not guilty to all charges on June 23, 2009.

Defendant waived his right to trial by jury, and a bench trial commenced on April 13, 2011. The trial court subsequently found Defendant guilty of aggravated rape, attempted first degree murder, and aggravated burglary. On April 21, 2011,

---

[1]Pursuant to La.R.S. 46:1844(W), the initials of the victim will be used to protect her identity.

Defendant was sentenced as follows. On his conviction for aggravated rape, he was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence; on his conviction for attempted first degree murder, he was sentenced to fifty years at hard labor without benefit of parole, probation, or suspension of sentence; and, on his conviction for aggravated burglary, he was sentenced to thirty years at hard labor. The trial court ordered that these sentences be served concurrently.

Defendant has appealed, asserting three assignments of error. He contends that the evidence was insufficient to convict him of attempted first degree murder, that the trial court erred in not assuring he knowingly and voluntarily waived his right to a jury trial, and that he was subjected to double jeopardy when he was convicted of both aggravated burglary and aggravated rape.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we note one error patent.

The record does not indicate that the trial court advised Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Therefore, we instruct the trial court to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within thirty days of the rendition of this opinion and to file written proof of same in the record of these proceedings. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

2

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, Defendant contends that the evidence was insufficient to prove all of the elements of attempted first degree murder.

> When a sufficiency of the evidence claim is raised on appeal, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Macon*, 06-481 (La.6/1/07), 957 So.2d 1280 (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

*State v. Jasper*, 11-488, p. 4 (La.App. 3 Cir. 11/2/11), 75 So.3d 984, 987.

Defendant was convicted of attempted first degree murder.

> First degree murder is the "killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm upon a victim under the age of twelve years." La. R.S. 14:30(A)(5). . . . Attempt is defined as "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended." La. R.S. 14:27(A).
>
> The crime of attempted murder, whether first or second degree, requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. *State v. Cepriano*, 00-213 (La.App. 5 Cir. 8/29/00), 767 So.2d 893, 897. Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Because specific intent is a state of mind, it need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. *State v. Lewis*, 97-160 (La.App. 5 Cir. 7/29/97), 698 So.2d 456, 459, *writ denied*, 97-2381 (La.3/27/98), 716 So.2d 881.

*State v. Alsay*, 11-562, pp. 7-8 (La.App. 5 Cir. 12/13/11), 81 So.3d 145, 149.

D.C. testified that she was ten years old when Defendant raped her. When interviewed, D.C. told the interviewer that Defendant raped her. She explained that rape meant he put his private in her and touched her where she did not want to be touched. D.C. said that Defendant entered her room through a window while

3

she was sleeping and got on top of her back and said, "Don't scream, or I'll kill you." Defendant then pulled down her pants. D.C. started crying, and he put his hand over her mouth. She then said that Defendant put his "private in my behind, and his finger, and he started to put his private in my private. And I kept trying to get him to stop, and he slapped me on my back, every time I didn't open my legs." After Defendant concluded these heinous acts, he told D.C. to get him back together with her mother. D.C. further stated:

> Whenever he had put me on the floor, and started to try and smother me with um. . .his shirt, or I think a pillow, I'm not sure about that one[,] but he tried to smother me on the floor. And[,]. . .he tried to put his private in me then. And then after that, he put me on the bunk bed, where the wood's at [sic] and he pushed me against it[;] then[,] he put his butt in my private, every time he would like, feel me screaming, or trying to scream, he would put his private deeper in my butt.

When asked about Defendant's attempts to smother her, D.C. stated, "He tried to push it down on my face, but he couldn't because. . .well, he did, but. . .I had my face like that, and he didn't notice." D.C. then stated she had her face turned sideways. D.C. again stated that Defendant slapped her on the back every time she would not open her legs, and then he would put his private in her private.

Dr. Christopher Lawrence, an emergency room physician, testified that D.C. was brought by ambulance to the emergency room on March 8, 2009. Dr. Lawrence stated that D.C. told him that Defendant said, "Don't scream or I'll kill you." D.C. also stated that Defendant restrained her by holding her mouth with his hand and holding her neck and that he slapped her on the back.

Dr. Lawrence further testified that D.C. had swelling to her right lip, abrasions to the lips, abrasions to the right cheek, and scratches and bruising on both sides of the neck. Dr. Lawrence also testified that the abrasions had to be

4

caused by a fairly rigid or semi-sharp object and that they could have been caused by "hands, any kind of choking maneuver with fingernails."

Nancy Mire, a registered nurse, testified that D.C. stated the following when asked what occurred:

> He came in through my window. He laid on top of my back and said, "Don't scream or I'll kill you." He pulled my pants down and started to put his private part in my butt. He started to put his finger in the bottom . . . . He put his private part in my private. He kissed me and put his tongue in my mouth. . . . He put [me] on my knees against the wall -- against the wood of [the] bunk bed and started to put his private part into my bottom. He put me on the floor and tried to smother me with his T-shirt. He started to talk to me, told me he was sorry and help me get -- get me and your mom back together and tell your brother to help me and your mom get back together. He stated your mother does not tell you the truth about how your dad died. Patient states he had his hand over her mouth the whole time. He wiped the window sill with his shirt and put the screen back on the window.

Trinh Landry, a DNA analyst, testified that Defendant's DNA was found on vaginal and rectal swabs taken from D.C.

In support of his argument that the State failed to prove he had the specific intent to kill D.C., Defendant cites numerous cases involving dangerous weapons and vehicles. He then asserts that the testimony he told D.C. to help him reunite with her mother is inconsistent with a finding that he had the specific intent to kill D.C. Defendant further asserts there was no evidence that he attempted to deprive D.C. of oxygen and suffocate her. He contends that the acts of putting a hand and shirt over D.C.'s mouth were consistent with attempting to prevent her from screaming and that more would be necessary to prove he had the specific intent to kill her.

The State argues that Defendant's act of threatening to kill D.C., placing a shirt over her face, and the marks on D.C.'s face and neck indicate that he had the specific intent to kill her.

5

In *State v. Wommack*, 00-137 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62, the victim got into her van and was grabbed by the defendant, who put a large cloth over her mouth with one hand and grabbed her throat and squeezed it with the other. The defendant then stated, "I'm going to kill you." *Id*. at 368. The victim and the defendant struggled, and the victim was able to release the defendant's grip from her neck so that she could speak. The victim continued to struggle and was eventually able to open the van door, falling out of the van and onto her neck. She then ran to the car of a co-worker. The defendant was convicted of attempted second degree murder.

On appeal, the defendant, in *Wommack*, argued that the State failed to prove he had the specific intent to kill the victim. In finding the evidence was sufficient to support the defendant's conviction, this court stated:

> [W]e find sufficient evidence to support a finding of specific intent to kill. Ms. Smith testified that the assailant grabbed her by the throat, making it impossible to breathe. It was only after she continued to struggle that she was able to breathe and speak. The struggle, which included Ms. Smith being placed in a chokehold, lasted long enough for several verbal exchanges and was severe enough to have caused blood-producing injuries. The pressure was sufficient to produce bruising on Ms. Smith's neck which is evident in photos presented to the jury. Furthermore, Ms. Smith's testimony indicated that the assailant verbalized his intent to kill her. These factors support the jury's conclusion that the defendant's intent was to kill or inflict great bodily harm. *See* La.R.S. 14:30.1. Furthermore, the jury reached its decision in the face of the possibility of convicting the defendant of aggravated battery, the elements of which were included in the instruction. This assignment lacks merit.

*Id*. at 373.

Based on *Wommack*, we find that Defendant's verbalizing of his intent to kill, along with the fact that he placed his hand over D.C.'s mouth, his putting of a shirt over her face to suffocate her, and his holding of her neck hard enough to

cause bruising were sufficient for the trial court to infer that he had the specific intent to kill D.C. Accordingly, we find this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, Defendant contends that the trial court erred in not assuring he knowingly and voluntarily waived his right to trial by jury.

> Louisiana Code of Criminal Procedure article 780(A) provides in pertinent part that "[a] defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge." Additionally, the defendant, with the permission of the trial judge, "may exercise his right to waive trial by jury at any time prior to the commencement of trial." La.Code Crim.P. art. 780(B). While the trial judge must determine if the defendant's jury trial waiver is knowing and intelligent, that determination does not require a *Boykin*-like colloquy. *See State v. Frank*, 549 So.2d 401 (La.App. 3 Cir.1989).

> > As in the case of other significant rights, waiver of trial by jury is valid only if the defendant acted voluntarily and knowingly. *State v. Kahey*, 436 So.2d 475, 486 (La.1983); *State v. Wilson*, 437 So.2d 272, 275 (La.1983). While the Louisiana Supreme Court has rejected an absolute rule which would require the trial judge to personally inform the defendant of his right to a jury trial, *Kahey*, *supra*; *State v. Moya*, 539 So.2d 756, 758 (La.App. 3d Cir.1989), the preferred method of ensuring the right is for the trial judge to advise the defendant personally on the record of his right to a jury trial and to require the defendant to waive the right personally either in writing or by oral statement in open court on the record. *State v. Wilson*, 437 So.2d at 275; *State v. Jones*, 537 So.2d 1244, 1247 (La.App. 4th Cir.1989); *State v. Moya*, 539 So.2d at 758.

> *State v. Abbott*, 92-731, pp. 3-4 (La.App. 4 Cir. 2/25/94), 634 So.2d 911, 913-914.

*State v. Roberts*, 01-154, p. 13 (La.App. 3 Cir. 10/3/01), 796 So.2d 779, 788, *writ denied*, 01-2974 (La. 9/20/02), 825 So.2d 1163.

Defendant was entitled to a jury trial on the charges of aggravated rape, attempted first degree murder, and aggravated burglary. *See* La.Code Crim.P. art. 779; La.R.S. 14:42; La.R.S. 14:30 and La.R.S. 14:27; and La.R.S. 14:60. On

February 7, 2011, a Motion and Order to Waive Jury was filed. The motion was signed by defense counsel but not by Defendant. An order waiving the jury trial was signed by the trial court on February 9, 2011.

The issue of waiving a trial by jury was raised again in the trial court on February 14, 2011. The transcript for that date indicates the following occurred:

BY MR. PRATHER:

Judge, the issue [as] to waiving the Jury and be heard as a Judge Trial. I don't object to ----

BY THE COURT:

Is that correct, Mr. Alonzo?

BY MR. ALONZO:

That is correct, Your Honor.

BY THE COURT:

Is that correct Mr. Tyler, you wish to waive the jury?

BY MR. TYLER:

Yes, Sir.

BY THE COURT:

I grant the Continuous [sic] and grant that this case be heard as a Judge Trial and set this case for [the] next trial date.

Defendant contends that there is no indication that he made a valid waiver. He alleges nothing in the record states that he was made aware of his right to trial by jury. Defendant contends that defense counsel's motion was insufficient to establish a knowing waiver and that the record does not indicate that the judge questioned him about his educational background or his ability to understand a waiver of his right to a trial by jury.

8

An issue similar to that in the case at bar arose in *State v. Bryant*, 06-1154 (La.App. 4 Cir. 1/10/07), 950 So.2d 37. Therein, the defendant alleged that the trial court erred in permitting him to waive his right to a trial by jury without first obtaining an adequate waiver of that right. The pre-trial colloquy regarding the issue read as follows:

> Trial court: How are [sic] feeling today, Mr. Bryant?
> Bryant: Sore.
> Trial court: You're sore?
> Bryant: Yes.
> Trial court: But I mean the medicine isn't having any affect [*sic* ] on you from yesterday or yesterday's accident?
> Bryant: Yes, it has an affect [*sic* ]. I don't hurt as much.
> Trial court: You don't what?
> Bryant: I don't hurt as much.
> Trial court: Oh, so you don't hurt as much, so a positive affect [sic]. So, you're aware of what you're doing here today, correct?
> Bryant: Yes, sir.
> Trial court: And Mr. Fuller [defense counsel] has indicated that today you've chosen to go to trial by judge rather than jury; is that correct?
> Bryant: Yes, sir.
> Trial court: Have a seat, sir.

*Id*. at 40.

The fourth circuit, in *Bryant*, denied the defendant's claim, stating the following:

> [T]he trial court in the present matter was not required to personally inform Bryant of his right to a jury trial. The transcript in the present matter reveals that Bryant's counsel informed the trial court that Bryant wished to waive the jury and to proceed to trial by judge. Further, the transcript in the present matter shows that the trial court addressed Bryant personally and that Bryant confirmed that he wished to go to trial by judge rather than jury.
>
> In *Abbott*, 634 So.2d at 914, the defendant argued in a *pro se* assignment of error that he did not knowingly, intelligently, and voluntarily waive his right to trial by jury. After reviewing the applicable jurisprudence, this Court wrote: "The transcript indicates that the trial judge was advised by counsel that the defendant wanted to waive the jury. The judge then addressed the defendant personally, who confirmed that he sought to waive the jury. This assignment has no merit." *Id*. The facts of this case are substantially similar to the facts of *Abbott*. In light of this observation, and the principle that the

9

trial court is not required to personally inform a defendant of his right to trial by jury, we conclude that Bryant's assertion that he did not knowingly and intelligently waive his right to a trial by jury lacks merit.

*Id.* at 41. *See also State v. P.T.*, 07-665 (La.App. 3 Cir. 12/5/07), 970 So.2d 1255, *writ denied*, 08-26 (La. 5/30/08), 983 So.2d 895.

We find that the trial court was not required to personally inform Defendant of his right to trial by jury. Further, Defendant in the case at bar, just like the defendants in *Bryant*, 950 So.2d 37, and *Abbott*, 634 So.2d 911, confirmed his desire to waive his right to trial by jury when personally addressed by the trial court. Accordingly, we find Defendant's assertion that he did not knowingly and intelligently waive his right to trial by jury lacks merit.

## ASSIGNMENT OF ERROR NO. 3

In his third assignment of error, Defendant contends that he was subject to double jeopardy when he was convicted of both aggravated burglary and aggravated rape arising from the same course of criminal conduct.

In *State v. Archield*, 09-1116, p. 4 (La.App. 3 Cir. 4/7/10), 34 So.3d 434, 438, *writ denied*, 10-1146 (La. 5/20/11), 63 So.3d 972, this court set forth the tests to be applied when reviewing a double jeopardy claim, explaining:

> Both the United States and Louisiana Constitutions prohibit double jeopardy; the imposition of multiple punishments for a single criminal act. *See* U.S. Const. amend. V; La. Const. art. 1, § 15. *See also*, La.Code Crim.P. art. 591. Louisiana courts use two methods, the "Blockburger Test" and the "same evidence test", to determine whether double jeopardy exists. *State v. Williams*, 07-931 (La.2/26/08), 978 So.2d 895.
>
> In *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the United States Supreme Court interpreted the Fifth Amendment's prohibition of double jeopardy and enunciated the following test to be employed by the federal courts, as follows:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

In interpreting Article 1, Section 15 of the Louisiana Constitution, Louisiana courts have also used the broader "same evidence test" which provides:

> If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.

*State v. Cotton*, 00-850, p. 5 (La.1/29/01), 778 So.2d 569, 573, quoting *State v. Steele*, 387 So.2d 1175, 1177 (La.1980).

### *Blockburger* **Test:**

Defendant was convicted of aggravated burglary. Louisiana Revised Statutes 14:60 defines aggravated burglary as follows:

> Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
>
> (1) Is armed with a dangerous weapon; or
>
> (2) After entering arms himself with a dangerous weapon; or
>
> (3) Commits a battery upon any person while in such place, or in entering or leaving such place.

Defendant was also convicted of aggravated rape. Louisiana Revised Statutes 14:42 provides, in pertinent part:

> A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

11

. . . .

(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

We find no violation of double jeopardy under the *Blockburger* test. Aggravated burglary requires the unique element of unauthorized entering of an inhabited dwelling; whereas, aggravated rape requires proof of the unique element of sexual intercourse. *See State v. Anderson*, 11-106 (La.App. 3 Cir. 6/1/11), 66 So.3d 568, *writ denied*, 11-1493 (La. 9/23/11), 69 So.3d 1167; *State v. Williams*, 05-1338 (La.App. 3 Cir. 3/1/06), 924 So.2d 1159, *writ denied*, 06-1471 (La. 12/15/06), 944 So.2d 1284.

**Same Evidence Test:**

Defendant alleges that the battery in the case at bar cannot be separated from the act of rape, as there was not a separate battery apart from the actual acts constituting the rape allegation. Defendant contends that the slaps to D.C.'s back and the holding of her face and mouth were part of the aggravated rape and not separate acts of battery.

The State asserts Defendant could have been convicted of aggravated burglary without proof that a rape occurred, considering the fact that D.C. stated that Defendant hit, smothered, and strangled her after forcefully gaining entrance into the residence. In support of this argument, the State cites *State v. Anderson*, 499 So.2d 1252 (La.App. 4 Cir. 1986), *writ denied*, 503 So.2d 490 (La.1987).

In *Anderson*, 66 So.3d at 588-90, this court stated the following:

We have found no reported cases specifically addressing whether a double jeopardy violation occurs when Defendant is convicted of the felony and the intent to commit the same felony is used for a burglary conviction. However, in *State v. Solomon*, 379 So.2d 1078, 1079-80 (La.1980), the court implied no such violation, holding in pertinent part:

12

Because the defendant plead guilty to the burglary charge, there is no trial transcript to review in order to determine whether evidence in the theft trial would be the "same evidence" to prove the burglary charge. We do have the testimony from the motion to quash which may be utilized for this purpose. Testimony of the arresting officers at the trial of the motion to quash set forth the facts on which the simple burglary charge was based. Their testimony establishes that the burglary and theft charges deal with the same incident of defendant entering Officer Bourgeois' vehicle on the night of November 28, 1978. Therefore, it can be determined that the exact same evidence is not required for a conviction of the defendant on both the burglary and theft charges because a conviction of burglary requires the additional proof of an unauthorized entry with the intent to commit a felony or any theft therein. R.S. 14:62. Furthermore, the two charges are not based on the exact same conduct as was the case in [*State v. Bonfanti*, 262 La. 153, 262 So.2d 504 (1972); *State v. Didier*, 262 La. 364, 263 So.2d 322 (1972) ]. The crime of burglary was completed upon entry into the car with the intent to commit the theft therein, whereas the theft did not occur until the defendant actually took the watch from the glove compartment. This distinction makes it clear that burglary of the automobile and the theft of the watch were two separate and distinct offenses[;] and[,] therefore, the conviction of one would not bar a conviction of the other on the grounds that the defendant would be placed twice in jeopardy for the same offense.

Additionally, in *Archield*, 34 So.3d 434, on appeal, the defendant challenged his convictions of aggravated rape and aggravated burglary on the basis of double jeopardy. This court found no double jeopardy violation wherein the intent to commit the rape and the conviction for the rape were not questioned, and no other facts were set forth to show that the defendant entered the house with the intent to commit a theft or any felony other than rape. This court held in pertinent part:

> The record supports the determination that in the present matter the crimes of aggravated rape and aggravated battery were separate and distinct offenses. The defendant could have been convicted of aggravated rape without proof that an aggravated burglary occurred. The evidence adduced through testimony showed that the defendant had non-consensual sexual intercourse with C.S.[,] and C.S. was prevented from resisting because the defendant threatened to kill her with the apparent power to execute that threat. La. R.S. 14:42(A)(2).

Further, the defendant could have been convicted of aggravated burglary without proof that any rape occurred, considering that he committed battery upon C.S. by hitting, dragging and shoving her, after he forcibly gained entrance into the house. La. R.S. 14:60(3). Also, aggravated burglary could have been proven under the second aggravating factor of La. R.S. 14:60—when a perpetrator arms himself with a dangerous weapon after entering the inhabited dwelling. A dangerous weapon is defined as instrument "which, in the manner used, is calculated or likely to produce death or great bodily harm." La. R.S. 14:2(A)(3). A vase[,] held over one's head in the manner presented in this case, arguably constitutes a dangerous weapon.

*Id*. at 440 (footnote omitted).

In *State v. Davis*, 09-1061 (La.App. 3 Cir. 4/7/10), 36 So.3d 351, the defendant was convicted of aggravated rape and aggravated burglary. On appeal, the defendant asserted a double jeopardy violation. Although this court did specifically address whether the use of intent to commit the rape and the completed rape violated double jeopardy, it stated in pertinent part:

In the current case, as in [*State v. Anderson*, 499 So.2d 1252 (La.App. 4th Cir.1986), *writ denied*, 503 So.2d 490 (La.1987)], *it was apparent from the facts that Defendant intended to commit a rape when he entered the trailer, a felony*. Further, the physical abuse constituted the battery element of aggravated burglary, and, as in *Anderson*, "[a]lthough the victim's beating fulfills one element of both crimes," the battery did not fulfill the distinguishing elements of each, i.e., the unauthorized entry and sexual intercourse.

*Id*. at 361 (emphasis added).

Considering the foregoing, we find no violation of double jeopardy under the same evidence test based upon the use of intent to commit a felony, the rape, and the completed act of the rape.

Moreover, in the instant case, R.G. testified that before the rape, Defendant grabbed her throat and choked her. Additionally, R.G. testified that Defendant threatened to kill her if she did not do what he wanted her to do, and he raped her.

We find that the evidence of the unlawful entry into R.G.'s apartment and Defendant choking R.G. were not necessary for a conviction of forcible rape. The crime of aggravated burglary was

14

completed when Defendant entered the apartment, with the intent to commit a felony, and choked R.G. Additionally, the evidence showed that Defendant had non-consensual sexual intercourse with R.G., and R.G. was prevented from resisting because Defendant threatened to kill her with the apparent ability to carry out the threat. La.R.S. 14:42.1(A)(1). Thus, we find that the record supports the premise that the crimes of forcible rape and aggravated burglary were separate and distinct offenses. Therefore, there is no double jeopardy violation regarding crimes against R.G.

Regarding the crimes against J.S., she testified that when she woke up and saw the man in her apartment, she screamed. J.S. stated Defendant reached for her neck, straddled over her, and began to choke her with both of his hands. J.S. testified in pertinent part: "I tried to fight him off, and I pushed his eyes in his head with both my hands because that's really all I could do, all I could see. Then, I tried to get him off of me and I could not." J.S. explained that Defendant was on top of her and stated, "He was pulling on my clothes and holding me down with one hand . . . ."

We find that the evidence of the unlawful entry into J.S.'s apartment, with the intent to commit a felony, and Defendant choking J.S. were not necessary elements for a conviction forcible rape. The crime of aggravated burglary was completed when Defendant entered the apartment and choked J.S. Additionally, the evidence showed that Defendant had non-consensual sexual intercourse with J.S. and that J.S. was prevented from resisting because Defendant held her down despite her efforts to fight him off. La.R.S. 14:42.1(A)(1). Thus, we find that the record supports the premise that the crimes of forcible rape and aggravated burglary were separate and distinct offenses. Therefore, there is no double jeopardy violation regarding the crimes against J.S.

In the instant case, as in the above-mentioned cases, we find that the record supports the determination that the crimes of aggravated rape and aggravated burglary were separate and distinct offenses. Defendant could have been convicted of aggravated rape without proof that an aggravated burglary occurred. The evidence adduced showed that Defendant had non-consensual sexual intercourse with D.C., who was under the age of thirteen at the time of the offenses. La.R.S. 14:42(A)(4). Further, Defendant could have been convicted of aggravated burglary without proof that sexual intercourse occurred, considering that he

15

committed battery upon D.C. by hitting her on the back after he gained entry into her home.  For these reasons, we find this assignment of error lacks merit.

## DISPOSITION

Defendant's convictions are affirmed.  We order the trial court to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to him within thirty days of the rendition of this opinion and to file written proof of same in the record.

**AFFIRMED.**