STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 CA 0269

NEILL CORPORATION

VERSUS

ANNA SHUTT, JULIA DEZIEL, STEPHANIE GARCIA
AND JILL ENGLISH

*Judgment Rendered:*   JAN 2 5 2021

********

Appealed from the 21st Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Suit No. 2019-0001961

The Honorable Elizabeth P. Wolfe, Judge Presiding

********

| | |
|---|---|
| Jennifer A. Lee | Counsel for Plaintiff/Appellee |
| Matthew A Sherman | Neill Corporation |
| Hammond, Louisiana | |
| | |
| Jeffrey S. Wittenbrink | Counsel for Defendant/Appellant |
| Carmen T. Hebert | Anna Shutt, Julia Deziel, Stephanie |
| Baton Rouge, Louisiana | Garcia, Jill English |

********

BEFORE: GUIDRY, McCLENDON, AND LANIER, JJ.

**LANIER, J.**

In this appeal, the defendants, Anna Shutt, Julia Deziel, Stephanie Garcia, and Jill English challenge the judgment of the Twenty-first Judicial District Court granting injunctive relief to the plaintiff, Neill Corporation (Neill). Neill has also filed before this court a motion to dismiss the defendants' appeal for lack of subject matter jurisdiction. For the following reasons, we vacate the judgment of March 11, 2020, deny the motion to dismiss the appeal, amend the trial court's judgment in part, and affirm as amended.

## FACTS AND PROCEDURAL HISTORY

On July 1, 2019, Neill filed a motion for temporary restraining order against its former employees, the defendants. Neill alleged in the motion that prior to receiving employment as hairdressers, the defendants executed employment agreements with Neill, specifically prohibiting each defendant from competing with Neill within East Baton Rouge Parish for a period of six months following termination of employment. The agreements further prohibited the defendants from soliciting or drawing customers and employees away from Neill for a period of two years following their termination. The agreements also prohibited the defendants from utilizing Neill's confidential proprietary trade information against Neill for a period of five years following their termination.

Neill alleged that after the defendants' employment was terminated on June 26, 2019, they violated the above non-competition provisions of their agreements by engaging in a hair salon business that was in direct competition with Neill as early as June 27 or 28, 2019. Neill also suspected the defendants were soliciting its customers by using Neill's confidential customer lists, as well as soliciting Neill's employees to seek employment elsewhere.[1] Neill attempted to notify the

---

[1] Neill attached to the motion photographs that allegedly show the defendants working as hairdressers at Sola Salons in Baton Rouge.

2

defendants of its intent to file a restraining order against them for the aforementioned violations.

Neill also filed a petition for injunctive relief and damages on July 1, 2019, which contained the same allegations as the motion for a temporary restraining order.[2] Neill attached copies of each employment agreement allegedly executed by the defendants. After a hearing on August 29, 2019, the trial court signed a judgment on September 9, 2019 finding the defendants in contempt of court for violating the temporary restraining order and granting a preliminary restraining order against the defendants. Specifically, the defendants were ordered:

1. Not to engage in business that would be in direct competition with Neill within East Baton Rouge Parish for six months following the issuance of the injunction;

2. Not to solicit customers from Neill within East Baton Rouge Parish for two years following the issuance of the injunction;

3. Not to solicit employees from Neill to become employed elsewhere for two years following the issuance of the injunction;

4. Not to disclose or utilize any of Neill's confidential information for five years following the issuance of the injunction.

The defendants filed a motion for a new trial on September 12, 2019. On September 17, 2019, the defendants filed a motion for suspensive appeal before the motion for new trial had been resolved. The defendants filed a bond for the suspensive appeal on September 18, 2019. The defendants, however, had not paid the costs of the appeal as of that date and had not requested from the trial court an extension to pay those costs. The Clerk of the 21st JDC filed a motion to dismiss the appeal due to the defendants' failure to pay the costs of the appeal, and on January 3, 2020, the defendants paid the appeal costs to the Clerk. On February 24, 2020, the trial court heard the Clerk's motion to dismiss the appeal, and on

---

[2] While the alleged violations occurred in East Baton Rouge Parish, the agreements contained a provision that the proper venue for disputes concerning the agreements would be Tangipahoa Parish. Neill amended its petition on July 24, 2019 to reference this provision. The defendants filed an exception of improper venue, which the trial court denied on September 9, 2019.

3

March 11, 2020, the trial court signed a judgment granting the Clerk's motion and dismissing the appeal. There has been no appeal of that judgment.

The record in the instant appeal was also lodged with this court on March 11, 2020. On April 13, 2020, Neill filed in this court a motion to dismiss the appeal for lack of jurisdiction. On August 28, 2020, this court issued a rule to show cause as to why the instant appeal should not be dismissed as premature since the record did not contain a ruling on the defendants' motion for new trial. In the defendants' response to the rule to show cause, they informed this court that they had filed a motion to dismiss the motion for new trial, and that the trial court granted the motion. On September 28, 2020, we maintained the appeal, instructing this court's clerk's office to supplement the record with the motion to dismiss the motion for new trial, filed in the trial court on November 22 2019, and the corresponding order dismissing the motion for new trial, signed by the trial court on November 25, 2019. The record was so supplemented on October 5, 2020. Neill's motion to dismiss the appeal filed in this court remains outstanding.

**MOTION TO DISMISS APPEAL**

The crux of Neill's argument supporting the motion to dismiss the appeal filed in this court is that the appeal had already been dismissed by the trial court due to the defendants' abandonment, thereby removing jurisdiction to hear the appeal from this court.

Divestment of jurisdiction of the trial court after an appeal is taken is governed by La. C.C.P. art. 2088. Generally, the trial court's jurisdiction is divested on the granting of the order of appeal and, in the case of suspensive appeals, the timely filing of the appeal bond. However, the trial court retains jurisdiction over certain enumerated matters found in La. C.C.P. art. 2088(A). One such matter is the failure to timely pay the appeal costs. See La. C.C.P. art. 2088(A)(9).

The procedure for the payment of costs is governed by La. C.C.P. art. 2126. Under paragraph (B) of that article, the appellant shall pay the costs within twenty days of the mailing of the notice of costs to the appellant. Paragraph (E) states that if the appellant fails to timely pay the costs, the trial court on its own motion, or the clerk of court, or any party upon their motion and after a hearing, may enter a formal order of dismissal on the grounds of abandonment, or grant an extension of ten days for the payment of the costs. If the costs are not paid after the extension, the appeal is dismissed as abandoned.

In the instant case, the trial court signed the order granting a suspensive appeal on September 17, 2019. The defendants filed the appeal bond on September 18, 2019. At that point, jurisdiction had divested from the trial court to this court, but the trial court retained jurisdiction over the matter of the unpaid appeal costs. The record contains a notice of the suspensive appeal sent on September 19, 2019 by the clerk of court and addressed to all parties, but the notice does not contain an estimate of the appeal costs. Nevertheless, the defendants paid the appeal costs on January 3, 2020, before the hearing on the motion to dismiss the appeal was held.

The application of La. C.C.P. art. 2126 has been interpreted by the Louisiana Supreme Court in *Pray v. First Nat. Bank of Jefferson Parish*, 634 So.2d 1163 (La. 1994), as that the primary purpose of La. C.C.P. art. 2126's authorization to dismiss appeals for non-payment of costs is to dismiss the appeal as abandoned, in those cases in which the appellant files a timely appeal and thereafter decides not to pursue it. A secondary purpose is to ensure prompt payment of costs of appeal by dilatory appellants. The focus of district courts in deciding Article 2126 motions to dismiss should be on securing payment of costs in order to move appeals forward rather than on dismissing appeals, although obviously not

5

abandoned, simply because a motion was filed after expiration of the twenty-day period for paying the costs. *Id.*

In a case before this court, *Schmolke v. Clary*, 2003-2107 (La. App. 1 Cir. 9/17/04), 884 So.2d 675, writ denied, 2004-3089 (La. 2/18/05), 896 So.2d 41, the appellants filed two motions for an extension to pay the appeal costs. Both motions were granted by the trial court. Despite the extensions, the appellants failed to pay the costs, and the appellees filed a motion to dismiss the appeal. By the time of the hearing on the motion to dismiss, which was approximately seven weeks after the second extension had expired, the appeal costs still had not been paid. The trial court granted the motion to dismiss the appeal. *Id.*, 676-77. The appellants then appealed that judgment, asserting the trial court abused its discretion by dismissing the appeal rather than granting another ten-day extension. *Id.*, 676. We affirmed the trial court in *Schmolke*, finding that the court did not abuse its discretion in dismissing the appeal, because the appellants had outright failed to pay the appeal costs after being granted another twenty days on top of the twenty days initially granted under La. C.C.P. art. 2126.

In the instant case, we are presented with a different set of circumstances from *Schmolke's*. First, it is unclear from the record exactly when the defendants received the notice of the amount of the appeal costs, but evidently they received the notice prior to January 3, 2020, when they paid the costs. The defendants never requested an extension of the period to pay the appeal costs. Lastly, and most importantly, the defendants paid the costs before the hearing on the motion to dismiss was held. The payment is indicative of the defendants' intent not to abandon the appeal, and the payment also rendered the motion to dismiss the appeal moot.

Based on the defendants' payment of the appeal costs prior to the hearing, coupled with the policy in *Pray* to favor appeals when the appellants affirmatively

show an intent to maintain them, we find the payment mooted the motion to dismiss the appeal, and the hearing on the motion never should have occurred. As such, the judgment of March 11, 2020 is vacated as null and set aside. Jurisdiction divested to this court upon the signing of the order of appeal and the filing of appeal bond on September 18, 2019, and thus the motion to dismiss the appeal filed by Neill in this court is denied.

## ASSIGNMENTS OF ERROR

The defendants present three assignments of error:

1. The trial court erred in granting a preliminary injunction when the noncompetition agreement on which the preliminary injunction was premised is unenforceable.

2. The trial court erred in granting a preliminary injunction when the defendants terminated the employment agreements, including the restrictive employment covenants, prior to the hearing on the preliminary injunction.

3. The trial court erred in granting a preliminary injunction with restrictive covenants on employment to run from the date the order of the preliminary injunction was signed, instead of the date of termination of employment as set forth in the employment agreement.

## STANDARD OF REVIEW

A preliminary injunction is an interlocutory procedural device designed to preserve the status quo between the parties, pending a trial on the merits. *Hill v. Jindal*, 2014-1757 (La. App. 1 Cir. 6/17/15), 175 So.3d 988, 1002, writ denied, 2015-1394 (La. 10/23/15), 179 So.3d 600. Generally, plaintiffs seeking issuance of a preliminary injunction bear the burden of establishing by a preponderance of the evidence a *prima facie* showing that they will prevail on the merits and that irreparable injury or loss will result without the preliminary injunction. La. C.C.P. art. 3601; *Paradigm Health System, L.L.C. v. Faust*, 2016-1276 (La. App. 1 Cir. 4/12/17), 218 So.3d 1068, 1072. Although the judgment on the preliminary injunction is interlocutory, a party aggrieved by a judgment either granting or denying a preliminary injunction is entitled to an appeal. La. C.C.P. art. 3612(B).

We are, however, mindful that appellate review of a trial court's issuance of a preliminary injunction is limited. The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court and will not be disturbed on review unless a clear abuse of discretion has been shown. *Hill*, 175 So.3d at 1002.

## DISCUSSION

A noncompetition agreement is a contract between the parties who enter it, and it is to be construed according to the general rules of contract interpretation. *Regional Urology, L.L.C. v. Price*, 42,789 (La. App. 2 Cir. 9/26/07), 966 So.2d 1087, 1091, writ denied, 2007-2251 (La. 2/15/08), 976 So.2d 176. A contract must be interpreted within its "four corners" whenever the words of the contract are clear, explicit, and lead to no absurd consequences. When those conditions are met, a court is prohibited from taking parol evidence to explain or contradict the clear meaning of the contract. *Peterson v. Schimek*, 98-1712 (La. 3/2/99), 729 So.2d 1024, 1031.

Paragraph 3 of the agreement, titled "Termination," states that "[e]ither [Neill] or Employee may terminate this Agreement at any time, for any reason, or for no reason." Defendants argue in their brief that upon their termination of employment with Neill, their employment agreements terminated in entirety, including all non-competition, non-raiding, and non-interference agreements included therein. This simply cannot be the case, because if the sentence is interpreted literally, Paragraphs 5, 6, 7, and 8 which are the non-competition, non-raiding, and non-interference, and confidentiality agreements respectively, have no effect whatsoever. These paragraphs were to become effective upon termination, so it is nonsensical that a party can terminate those parts of the agreement upon termination of employment. It is the absurdity of the consequences of a literal interpretation which determines whether the court can search beyond the language

8

of the contract for the parties' intent. La. C.C. art. 2046; *Cashio v. Shoriak*, 481 So.2d 1013 (La. 1986).

We need not even go beyond the language of the contract to determine the parties' intent. Aside from that one sentence in Paragraph 3, the agreement's language is clear and does not lead to absurd consequences. The intent was clearly for the defendants to be employed by Neill, and for the defendants to not compete against Neill, take its clients or employees, or use its trade information upon their termination. We must therefore move on to determining whether these clauses are enforceable.

Historically, Louisiana has disfavored noncompetition agreements. Such agreements are deemed to be against public policy, except under the limited circumstances delineated by La. R.S. 23:921. *Paradigm*, 218 So.3d at 1072. At all times pertinent to this matter, La. R.S. 23:921 provided, in part, as follows:

> A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.
>
> . . .
>
> C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
>
> D. For the purposes of [Subsection] C... of this Section, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing.
>
> . . .
>
> H. Any agreement covered by Subsection... C... of this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the

9

obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement.

The statute *supra* relieves the trial court of determining whether irreparable injury will result without an injunction. We therefore must only determine if the provisions under question in the agreements are enforceable, and whether the trial court abused its discretion in ordering the preliminary injunction.

Paragraph 5 of the agreement, titled "Non-Competition Agreement," requires that former employees of Neill not engage in business similar to the employer's for a period of six months following termination within East Baton Rouge Parish, and not solicit Neill's customers for a period of two years following termination within East Baton Rouge Parish. A non-solicitation agreement is separate and apart from a non-compete agreement, but the requirements of La. R.S. 23:921 apply to both. *Vartech Systems, Inc. v. Hayden*, 2005-2499 (La. App. 1 Cir. 12/20/06), 951 So.2d 247, 260. The language of Paragraph 5 falls within the limits of La. R.S. 23:921(C), since it specifies a period of six months for non-competition and two years for non-soliciting of customers, and it specifies the geographic limitation of the agreement to East Baton Rouge Parish. Paragraph 5 is therefore enforceable.

Paragraph 6 of the agreement, titled "Non-Raiding Agreement," requires that former employees of Neill not solicit current employees of Neill for a period of two years following termination. Paragraph 7, titled "Non-Interference Agreement," requires that former employees of Neill not contact vendors and suppliers of Neill for the purpose of interfering with their relationship for a period of two years following termination. Paragraph 7 is in essence another non-solicitation agreement like Paragraph 6; however, unlike the non-solicitation of customers found in Paragraph 5, the non-raiding and non-interference agreements are strictly contractual. They do not restrain the defendants' exercise of their

10

profession, trade, or business, and are therefore not restricted by La. R.S. 23:921. Paragraphs 6 and 7 are thus enforceable contracts. See CDI Corp. v. Hough, 2008-0218 (La. App. 1 Cir. 3/27/09), 9 So.3d 282, 291-92.

Paragraph 8 of the agreement is titled "Confidentiality Agreement; Duty to Notify," and it requires that no former employee of Neill will keep or use any confidential proprietary information belonging to Neill for a period of five years following termination. Confidentiality agreements have been held enforceable and not subject to the prohibition (and requirements) of La. R.S. 23:921. *Engineered Mechanical Services, Inc. v. Langlois*, 464 So.2d 329, n. 15 (La. App. 1 Cir. 1984), writ denied, 467 So.2d 531 (La. 1985). A confidentiality agreement, unlike a covenant not to compete, cannot be challenged as an unreasonable restraint of trade. *Envirozone, LLC v. The Tarp Depot, Inc.*, 2016-0015 (La. App. 1 Cir. 12/22/16), 2016WL7444091, *4 (unpublished), writ denied, 2017-0308 (La. 4/7/17), 218 So.3d 112. Since the language of Paragraph 8 is clear and does not lead to absurd consequences, we find the confidentiality agreement to be enforceable.

The defendants also argue that the court erred in enforcing the restrictive periods of Paragraphs 5 through 8 from the date the preliminary injunction was signed instead of from the date their employment from Neill was terminated. The preliminary injunction in effect modified the terms of the employment agreements by making the agreements' restrictive periods effective from the date the trial court signed the order for injunction. In doing so, the court extended the non-solicitation portion of Paragraph 5 to beyond two years, which is prohibited under La. R.S. 23:921. The trial court did not have the authority to modify the terms of the contract, only enforce the terms as they were written. Therefore, the restrictive time limitations found in the employment agreements must be enforced from the date of the defendants' termination of employment.

11

## DECREE

The judgment of the 21st Judicial District Court of March 11, 2020 dismissing the appeal is vacated and set aside as null. The motion to dismiss appeal filed in this court by the appellee, Neill Corporation, is denied. The prohibitory periods set forth in the preliminary injunction ordered by the 21st Judicial District Court are amended to commence from the date of the defendants' termination of employment, rather than from the issuance of the injunction, and the judgment is affirmed as amended. Costs of this appeal are assessed to the appellants, Anna Shutt, Julia Deziel, Stephanie Garcia, and Jill English.

**JUDGMENT OF MARCH 11, 2020 VACATED; MOTION TO DISMISS APPEAL DENIED; JUDGMENT AMENDED IN PART, AND AFFIRMED AS AMENDED.**